HALLETT CONSTRUCTION COMPANY, a Minnesota corporation, appellant, v. IOWA STATE HIGHWAY COMMISSION, appellee.

No. 51693.

(Reported in 139 N.W.2d 421)

JANUARY 11, 1966.

Austin, Grefe & Sidney, of Des Moines, for appellant.

Lawrence F. Scalise, Attorney General, L. Michael McGrane, Assistant Attorney General, and Ray Hanrahan, State Counsel, for appellee.

522

GARFIELD, C. J.—These are appeals by plaintiff, granted by us under rule 332, Rules of Civil Procedure, from a ruling of the district court setting aside default and judgment entered by its clerk in each of three similar law actions, consolidated here for purposes of appeal.

Two principal questions are presented: 1) Are plaintiff's claims "for a sum certain, or which by computation, can be made certain", within the meaning of rule 232(a), R. C. P., authorizing entry of judgment by the clerk on default? 2) Was "good cause shown" by defendant for setting aside the defaults, within the meaning of rule 236?

The trial court held that except for the retained percentage of the contract price due plaintiff-contractor under a paving contract with defendant Iowa State Highway Commission in the first of the three actions, plaintiff's claims are not "for a sum certain" as contemplated by rule 232(a). The court set aside not only each of the default judgments except for the one retained percentage but the defaults as well.

I. A rather full statement of the actions is called for. Plaintiff is a paving contractor with its principal place of business in Minnesota. Each petition alleges it entered into a written contract with defendant commission to pave part of Interstate 80 Highway in Cedar County. For present purposes the petitions are essentially similar. We will now refer particularly to the one first filed, on June 24, 1964, which asks the largest recovery. Copy of the contract is attached to and made part of the petition. The total contract price is $1,892,470.75 and this is the amount for which the contractor's bond, copy of which is also made part of the petition, was furnished.

The petition goes on to allege it was required to and did agree by letter to "have a two paver spread with all necessary equipment and personnel on the project July 1, 1959 * * *"; plaintiff complied with this requirement and was ready, willing and able to perform all tasks necessary for timely completion of the contract; defendant issued its certificate of completion of the contract September 11, 1961; defendant submitted to plaintiff its plans and specifications which were later embodied in the contract; defendant warranted and represented to plaintiff

—whether orally or in writing, expressly or impliedly, is not alleged—the plans and specifications were complete, accurate and sufficient to enable plaintiff to accurately compute its cost of construction and a reasonable profit in completing its bid and that all defendant's information and knowledge would be contained in the plans and specifications or communicated to plaintiff.

The petition also alleges defendant warranted and represented to plaintiff by the plans and specifications and the contract and extra work orders that plaintiff would be able to commence work on or about the date required by the contract, defendant would see that all preceding work was properly and timely performed without injury to plaintiff, the roadbed would require only limited subgrade correction, plaintiff would be able to proceed in an orderly and logical manner to complete the contract as required, and that construction could proceed free from other traffic and use of the right-of-way. The petition further alleges plaintiff relied upon these representations and warranties and was thereby induced to submit its bid and enter into the contract.

The petition then states the plans, specifications and contract were inadequate, insufficient and misleading and did not contain all information available to defendant; defendant knew, or in the exercise of reasonable care should have known, existing conditions and that the plans, specifications and contract were insufficient and misleading in six alleged respects; that defendant knew or should have known it was necessary for it to disclose all these matters to allow plaintiff to prepare a proper bid and perform its contract without detriment to it; because of plaintiff's inability to commence work as the contract required, traffic on the road, additional requirements not covered by the contract, inadequacy of subgrade and roadbed and refusal to permit orderly progress—all chargeable to defendant—plaintiff was required to furnish equipment, extra labor and materials and incur added expense not originally contemplated.

The petition goes on to allege the fair and reasonable amount of its damage as:

1) Rental value of equipment not usable because of inability to commence work                                    $263,997.20

| | |
|---|---|
| 2) Rental value of subgrade equipment not usable for the same reason | 142,262.40 |
| 3) Increased cement cost because of "excessive delay" | 17,053.99 |
| 4) Necessity for stone base because of failure of preceding contractor to perform contract | 7,267.51 |
| 5) Additional cost of hauls because of "inability to perform in orderly fashion" | 31,197.41 |
| 6) "Additional bulk hauls, *etc.*" | 9,459.38 |
| 7) "Traffic control" | 6,599.17 |
| 8) Construction temporary shoulders | 3,354.04 |
| 9) "Standby labor because of delays" | 5,424.34 |
| 10) "Excessive labor cost" | 99,111.03 |
| Total | $585,731.49 |

The petition then states defendant has acknowledged—in what manner is not alleged—plaintiff has sustained damages and at defendant's instance plaintiff submitted to it an itemized account of its claim, "no part of which has been settled or paid;" defendant issued its final estimate of what is due plaintiff under the contract, certifying the amount of the retained percentage as $197,411.69 and has acknowledged it owes plaintiff this amount. It is not alleged or argued defendant has acknowledged its indebtedness to plaintiff in any sum except the retained percentage.

Prayer of the petition is for judgment for $783,143.18 or in the alternative for "the acknowledged amount of $197,411.69" with interest from September 11, 1961, and the damages sustained in the amount of $585,731.49, also with interest from the same date.

Petitions in the other two actions are similar to the one just summarized except that in one only four, and in the other three, of the items of damage are claimed, the retained percentage is smaller, and the prayer of each is in a smaller amount. Total amount claimed in the three petitions is $966,236.83 with interest from September 1961.

A month after the petitions were filed defendant filed its

special appearance in each case. They were overruled September 4, 1964. Defendant filed nothing further and on November 4, 1964, "on plaintiff's request pursuant to rules 230 and 231, R. C. P.," the clerk entered default against defendant "for want of compliance with the Rules of Civil Procedure."

Also on November 4 plaintiff filed in each case what is denominated "Affidavit in Support of Judgment on Default Pursuant to Rule 232" of E. W. Hallett, president of plaintiff-corporation, stating (in the first case) he was in charge of all plaintiff's paving operations, he has read and understands the claim made in its petition, it "is for a sum certain and said amount is due plaintiff from defendant as damages and compensation based on the grounds and reasons alleged in the petition" and on behalf of plaintiff he requests the clerk to enter judgment for $783,143.18 with interest from September 11, 1961, and costs. The clerk complied with the request and entered judgment for the amount last referred to and interest.

Three days later, on November 7, defendant filed its motion to set aside default and default judgment on the four grounds: 1) Plaintiff's claim is not for a sum certain or which can be made certain by computation within the meaning of rule 232; 2) Defendant's failure to file pleadings is due in part to the complexities of the case and the fact its attorney was occupied with trial of other actions during the past three months. The inadvertent failure of defendant's attorney to protect a state agency should not be permitted to have an adverse effect upon rights of the state; 3) No execution can issue on a judgment against the state or its agencies and a judgment could only serve to guide the legislature in determining merits of the claim under chapter 25, Code, 1962; and 4) Where an attorney for the state fails to protect its rights it is the court's duty to do so.

Plaintiff's resistance to this motion is too long to summarize here. For the most part it challenges the legal sufficiency of the grounds of the motion. The resistance also alleges that on September 29, 1964, plaintiff's counsel wrote defendant's counsel, "I would be most appreciative if you would file answer in these matters."

As indicated at the outset, the trial court ruled that except

for the retained percentage due plaintiff in the first of the three actions the claims are not "for a sum certain" as contemplated by rule 232(a) and set aside the default judgments, except for the one retained percentage, and the defaults as well, provided defendant file its answer within ten days and, in the first action, promptly arrange to pay plaintiff the retained percentage of $197,411.69. Defendant's brief says it filed its answers and paid the $197,411.69 in compliance with the ruling.

II. We consider first whether the claim on which the clerk entered each judgment "is for a sum certain, or which by computation, can be made certain" within the meaning of rule 232 (a), R. C. P., so the clerk could make the entry. Defendant now concedes the part of each claim seeking to recover the retained percentage of the contract price is for a sum certain. We see no basis for the trial court's holding such part of two of the claims is not for a sum certain if that part of the first claim is for such a sum. In view of defendant's concession, we need consider only whether the part of each claim which exceeds the contract price is for a sum certain. We are clear it is not.

We shall not attempt a definition of "sum certain" as used in rule 232(a) that would apply to all cases, nor even select one of several applicable here. Meaning of the first of these two words, standing alone, is clear. The definition of "certain" in Webster's Third New International Dictionary, apparently in the sense here used, includes "fixed, settled, stated, * * * exact, precise, * * * particular, * * * sure, dependable." Each of these words appears in capital letters. "Sure" is given as the synonym.

The same dictionary lists "certain" as a synonym of "sure" and says, "Sure and certain are often interchangeable; in the few situations in which they do differ, sure may be used with judgments or expressions that are subjective or intuitive, certain with those that rest on indubitable evidence * * *."

The term "sum certain" most frequently appears in the law of negotiable instruments. Code section 541.1(2) of our Negotiable Instruments Law (chapter 541), and that of other states, provides an instrument to be negotiable "Must contain an unconditional promise or order to pay a sum certain in money." This provision is merely declaratory of the law which existed

prior to its adoption. State Bank of Halstad v. Bilstad, 162 Iowa, 433, 435, 136 N.W. 204, 49 L. R. A., N. S., 132; Annotation, 45 A. L. R. 1074, 1080.

Culbertson v. Nelson, 93 Iowa 187, 191, 192, 61 N.W. 854, 27 L. R. A. 222, 57 Am. St. Rep. 266, a leading case, holds a draft for "$900, with exchange, and eight per cent interest from date, if not paid when due" was nonnegotiable because of uncertainty of the sum to be paid. The opinion points out the certainty of the sum to be paid "must appear upon the face of the paper, and not from anything *dehors* the instrument. * * * the agreement to pay a certain sum at a particular place, when the acceptor lives at a different one, 'with exchange,' introduces an uncertainty as to the amount to be paid, which destroys the character and negotiability of the instrument as a bill of exchange." See also Persky v. Bank of America National Assn., 261 N. Y. 212, 185 N.E. 77, 78, 79.

The fact Code section 541.2(4) now provides the sum payable is a sum certain within the meaning of chapter 541, although it is to be paid with exchange, does not alter the prevailing rule that the certainty of the sum to be paid must appear on the face of the paper, not from anything dehors the instrument. See 11 Am. Jur.2d, Bills and Notes, section 157; 10 C. J. S., Bills and Notes, section 105b, page 561; Annotation, 45 A. L. R. 1074, 1080.

It is also the rule that the sum certain to be paid by a negotiable instrument must be ascertainable when the instrument is made, not at some future time. 10 C. J. S., Bills and Notes, section 105b, page 561; Annotation, 45 A. L. R. 1074, 1080.

Ace Grain Co., Inc. v. American Eagle Fire Ins. Co., S. Dist., N. Y., 11 F. R. D. 364, 365, 366, was an action to recover cargo damage on an insurance policy. The insurer had employed an independent surveyor to appraise the damage. Plaintiff contended the amount of the loss certified by the surveyor was a sum certain, the interest thereon was a matter of computation and the clerk could therefore enter judgment by default under federal rule 55(b)(1). In rejecting this contention, the court said: "The surveyor's findings represent an opinion as to value and other factors which the defendant is not required to ac-

cept or is it concluded thereby even though it retained the surveyor. * * * The claim, cargo damage under an insurance policy, is unliquidated and is not converted into one for *a liquidated amount or a sum certain* by a surveyor's report intended for adjustment or trial purposes. The defendant has the right to a judicial determination of the extent of the damages claimed by plaintiff and the appropriate method for determining this issue is either by the Court or upon a reference in accordance with Rule 55(b)(2)" [emphasis added]. See also United States v. Miller, D. C. Pa., 9 F. R. D. 506, 508.

██ The words we have italicized above are subject to the interpretation the court thought "liquidated amount" and "sum certain" have similar meaning. In any event the most common definitions of the two terms are very similar. "Liquidated" means adjusted, certain, settled with respect to amount, fixed. 54 C. J. S., pages 564, 565. See also Olson v. Wilson & Co., infra, and citations. A claim is liquidated when the amount thereof has been ascertained and agreed upon by the parties or fixed by operation of law. " 'A demand is not liquidated, even if it appears that something is due, unless it appears how much is due * * *.' " Olson v. Wilson & Co., 244 Iowa 895, 901, 58 N.W.2d 381, 385, and citations. See also 54 C. J. S., pages 564, 565.

██ We may observe plaintiff's counsel conceded in oral argument that if these claims are not for a sum certain the judgments should be set aside; also that if "sum certain" means "liquidated amount" these claims do not qualify. In this connection, it is suggested rule 232(a) would have used the latter term, rather than the former, if the rule were intended to mean "liquidated amount." We are not impressed by the suggestion. In promulgating rule 232(a) we were under no duty to use another term in lieu of "sum certain" merely because it had a similar, or perhaps more commonly used, meaning.

██ Plaintiff also contends each claim is for a "sum certain" because it asks a specific amount for each alleged item of damage and we are urged to adopt this as the meaning of the quoted term in rule 232(a). This we cannot do. To do so would permit almost any unliquidated claim at law to be transformed into one for a sum certain by merely placing a monetary amount

on the item of damage for which claim is made even though such amount has not been fixed, settled or agreed upon by the parties and regardless of the nature of the claim.

■ It is apparent that if any sum in addition to the retained percentage of the contract price was rightfully due plaintiff when the clerk entered these judgments the amount thereof was largely a matter of opinion on which qualified persons might fairly and honestly differ. As previously indicated, it is not asserted any part of the claim (other than the retained percentage) was ever agreed to in the written contract or otherwise. The damages claimed are over and above the sums the contract provides defendant would pay. Proof of them would be largely evidence dehors the contract.

Although we think what has been said disposes of the first principal question presented, we may observe that E. W. Hallett's affidavit above summarized consists mainly of his own conclusion—a legal one too—that the claim is for a sum certain and the amount is due as damages and compensation on the grounds alleged in the petition. No facts are stated to support the conclusion nor is it stated affiant has personal knowledge of the facts. Such claims as these cannot be thus transformed into one for a sum certain.

■ III. As stated, the trial court set aside not only the judgments the clerk entered on the defaults, except for the amount of the retained percentage in one case, but also the entries of default. We hold in Division II it was proper to set aside the three judgments, insofar as each exceeds the retained percentage of the contract price on the ground such part of each claim is not for a sum certain. But it does not follow the entries of default were properly set aside. That the claims were not for a sum certain is not a ground for setting aside the defaults.

Rule 236, R. C. P., so far as applicable, provides: "Setting aside default. On motion and for good cause shown, and upon such terms as the court prescribes, but not ex parte, the court may set aside a default or the judgment thereon, for mistake, inadvertence, surprise, excusable neglect or unavoidable casualty."

■ It is clear defendant was in default on November 4,

1964, for failure to move or plead within the time required by the Rules of Civil Procedure and the clerk was required to enter the defaults of record on plaintiff's demand. Rules 230, 231. The trial court had discretion under rule 236, supra, "for good cause shown" to set aside these entries. What, if any, good cause the court found for setting aside the defaults does not appear. Indeed this part of its ruling is hard to reconcile with the part which overrules all grounds of defendant's motion to set aside the default and judgment, except the ground that the clerk lacked authority to enter judgment on claims not for a sum certain. It is not argued here that defendant's motion should have been sustained on any of these other grounds.

■ Unlike section 11589, Code, 1939, which rule 236 rendered of no further force and effect, the rule does not require an affidavit of merits as a condition to setting aside a default. Swift v. Swift, 239 Iowa 62, 67, 29 N.W.2d 535, 538. However, "good cause" under the rule requires at least a claimed defense asserted in good faith. It would be a futile gesture to set aside a default if defendant claimed no meritorious defense. Svoboda v. Svoboda, 245 Iowa 111, 118, 60 N.W.2d 859, 863; Handy v. Handy, 250 Iowa 879, 884, 96 N.W.2d 922, 926; 49 C. J. S., Judgments, section 290a, pages 536, 537.

■ Courts generally require at least a prima facie showing of a meritorious defense as a condition to setting aside a default even though the statute may not expressly so provide. 49 C. J. S., Judgments, section 290a, page 536; 30A Am. Jur., Judgments, section 681, pages 648, 649; Trueblood v. Grayson Shops of Tennessee, Inc., E. D. Va., 32 F. R. D. 190, 196.

■ The burden rests on the movant to allege and prove the good cause for setting aside the default. Svoboda and Handy cases, supra. See also Gaynor v. Gaynor, 246 Iowa 1039, 1042, 70 N.W.2d 923, 924; 49 C. J. S., Judgments, section 290a, page 535.

Defendant here did not allege or prove a meritorious defense. As the ruling appealed from recites, "Defendant has in no way indicated a meritorious defense." This follows a quotation from Svoboda v. Svoboda, supra, pointing out that "good cause" under rule 236 requires at least a showing of a claimed defense. The ruling also cites and quotes from Gaynor v. Gaynor, supra.

There is no basis under this record for a holding by us that the trial court found there was a prima facie showing of a meritorious defense but the record does not reveal the fact. We must conclude the court set aside the entries of default as well as the judgments thereon because the claims were not for a sum certain. But, as stated, this is not a ground under rule 236 for setting aside the entries of default pursuant to rule 231.

The ruling appealed from must be reversed insofar as it sets aside the entries of default. Insofar as the judgments exceed the retained percentage in each case, the ruling properly sets the judgments aside and this part of the ruling is affirmed. The cause is remanded for further proceedings consistent with this opinion.—Affirmed in part; reversed in part and remanded.

All JUSTICES concur.