**INTERSTATE FOOD PROCESSING CORP.**

v.

**PELLERITO FOODS, INC.**

Supreme Judicial Court of Maine.

Argued March 3, 1993.

Decided April 12, 1993.

Richard N. Solman, Scott G. Hunter (orally), Solman & Hunter, Caribou, for plaintiff.

Alan S. Harding, Jefferson Ashby (orally), Harding Law Offices, Presque Isle, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

ROBERTS, Justice.

Pellerito Foods, Inc., appeals from a default judgment in favor of Interstate Food Processing Corporation entered in the Superior Court (Aroostook County, *Pierson, J.*). Pellerito contends that the court erred in denying its motion to set aside the default and the default judgment and in denying its motion to dismiss for lack of personal jurisdiction. We conclude that the court properly denied the motion to dismiss but erred in denying Pellerito's motion to set aside the default judgment. Accordingly we vacate the judgment.

This case arises out of a contract between Pellerito Foods, Inc., a Michigan corporation with a principal place of business in Detroit, Michigan, and Interstate Food Processing Corporation, a Maine corporation with a principal place of business in Fort Fairfield, whereby Interstate agreed to develop a private product label for Pellerito and to ship potato products under that label to Pellerito's Michigan offices. Interstate developed the private label and made six shipments to Pellerito. Pellerito, however, claimed the products were defective and refused to pay.

Interstate commenced this action, alleging a breach of contract and seeking payment of $12,967.84. Interstate agreed to Pellerito's request for a 30-day extension of the time within which to file an answer because Pellerito had not yet retained Maine counsel. Pellerito, however, failed to file an answer within the extended period, and a default was entered on Interstate's application. A default judgment was then entered by the clerk of the Superior Court. Pellerito's subsequent motions to dismiss for lack of personal jurisdiction and to set aside the default judgment were denied. This appeal followed.

I.

 The jurisdictional reach of Maine's long-arm statute, 14 M.R.S.A. § 704–A (1980), is coextensive with the permissible exercise of personal jurisdiction under the due process clause of the fourteenth amendment. *See Frazier v. Bankamerica Int'l*, 593 A.2d 661, 662 (Me. 1991); *Caluri v. Rypkema*, 570 A.2d 830, 831 (Me.), *cert. denied*, 498 U.S. 818, 111 S.Ct. 62, 112 L.Ed.2d 37 (1990). In order to exercise personal jurisdiction over a nonresident defendant consistent with the requirements of due process, we must determine that 1) Maine has a legitimate interest in the subject matter of the controversy; 2) the defendant, by its conduct, should reasonably have anticipated litigating in Maine; and 3) the exercise of jurisdiction by Maine's courts would comport with "traditional notions of fair play and substantial justice." *Frazier*, 593 A.2d at 662; *Harriman v. Demoulas Supermarkets, Inc.*, 518 A.2d 1035, 1036 (Me.1986), *cert. denied*, 481 U.S. 1048, 107 S.Ct. 2178, 95 L.Ed.2d 835 (1987). The plaintiff bears the burden of establishing that jurisdiction is proper under the first two parts of the test. *Electronic Media Int'l v. Pioneer Communications of America, Inc.*, 586 A.2d 1256, 1258 (Me.1991). The burden then shifts to the defendant to show that jurisdiction is improper under the third part. *Id.* at 1258–59. When there has been no testimonial hearing and the court proceeds on the parties' pleadings and affidavits, the plaintiff need only make a *prima facie* showing that jurisdiction exists, and the plaintiff's written allegations of jurisdiction are to be construed in its favor. *Id.* at 1259.

As to the first part of the test, Maine certainly has an interest in providing its citizens with a means of redress against nonresidents. *See Frazier,* 593 A.2d at 663. Moreover, given its importance to Maine's economy, the state has a legitimate interest in protecting its potato industry. Pellerito, however, argues that Interstate has failed to demonstrate the requisite minimum contacts between Pellerito and Maine to satisfy the second part of the test. For a foreign corporation to be subject to Maine's jurisdiction, "due process demands that the corporation have sufficient contacts with [Maine] to 'make it reasonable ... to require the corporation to defend the particular suit which is brought [here].'" *Harriman,* 518 A.2d at 1037 (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 317, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). The defendant's contacts may not "result solely from the 'unilateral activity of another party.'" *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984)). Rather, it is essential that the defendant purposefully avail itself of "the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–75, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). This requirement is met "[w]hen a defendant 'purposefully directs his activities at residents of a forum' by 'deliberately engaging in significant activities' in that forum or by 'creating continuing obligations between himself and residents' of the forum." *Harriman,* 518 A.2d at 1037 (quoting *Burger King,* 471 U.S. at 473–75, 105 S.Ct. at 2182–84).

Although Pellerito is not authorized to do business in Maine and does not have or maintain any property or other business facility here, Interstate has sustained its burden with respect to the second part of the test. Interstate's affidavits allege that Pellerito contacted Interstate's plant in Fort Fairfield to solicit a commitment to develop a private product label for Pellerito and to ship potato products under that label to Pellerito's Michigan offices. Pellerito's active solicitation of Interstate's business demonstrates purposeful involvement in Maine because Pellerito had reached out beyond one state and created a continuing relationship with a resident of Maine. *Id.* Moreover, by requiring Interstate to attach Pellerito's private label to their products, Pellerito exercised control over Interstate's performance, which also demonstrates purposeful involvement in Maine. *Id.* at 1038; *Caluri,* 570 A.2d at 833. Interstate's affidavits further allege that Pellerito's president made a number of telephone calls to Interstate's Fort Fairfield plant with regard to the development of the private label and to request changes in orders prior to shipment. This action demonstrates that the ongoing business relationship between the parties was not the result of unilateral action by Interstate. *See Harriman,* 518 A.2d at 1037.

With respect to the third part of the test, Pellerito has made no suggestion that litigating in Maine would be "'so gravely difficult and inconvenient'" that it would be a "'severe disadvantage'" to Pellerito. *Caluri,* 570 A.2d at 833 (quoting *Burger King,* 471 U.S. at 478, 105 S.Ct. at 2185). While Pellerito's contacts with Maine may be few, "[l]ess extensive activity is required where the cause of action arises out of or in connection with the defendant's forum-related activity." *Harriman,* 518 A.2d at 1038. Because Interstate's suit is on the contract, that is the case here.

## II.

Pellerito further contends that the court erred in denying its motion to set aside the default and the default judgment. M.R.Civ.P. 55(c) provides that "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." On a motion to set aside a default judgment made pursuant to Rule 60(b)(1), the defaulted party bears the burden of establishing a reasonable excuse for the default and a meritorious defense to the action. *See Hart v. Terry L. Hopkins, Inc.,* 588 A.2d 1187, 1190 (Me.1991). The denial of such a motion is reviewed only for an abuse of

discretion, with great deference accorded to the determinations of the trial court. *See Mockus v. Melanson*, 615 A.2d 245, 247 (Me.1992).

▮ Pellerito contends that it demonstrated a reasonable excuse because its Michigan counsel left his law firm without having retained Maine counsel and because the Michigan counsel believed he had secured from Interstate's counsel an "indefinite extension of time to answer the complaint." We disagree in both respects. Out-of-state counsel's failure to retain Maine counsel in a timely manner does not constitute a reasonable excuse for the default. *See Steel Serv. Center v. Prince Macaroni Mfg. Co.*, 438 A.2d 881, 882 (Me. 1981). Moreover, we find it patently unreasonable for an attorney to believe that he may respond to a complaint at his leisure. Because the court did not abuse its discretion in finding that Pellerito had failed to establish a reasonable excuse for the default, we need not address the question of a meritorious defense.

### III.

▮ Although the issue has not been raised, we examine the validity of the entry of a default judgment pursuant to M.R.Civ.P. 55(b)(1). The rule limits the clerk's authority to instances where the plaintiff's claim is for "a sum certain or for a sum which can by computation be made certain." *Id.* In entering a default judgment under Rule 55(b)(1), the clerk performs a purely ministerial function. Because the clerk has no power to enter a judgment for an amount which is not a sum certain or which cannot be made certain by computation, any judgment so entered is void. *Arekay Realty Group v. Lievi*, 595 A.2d 1036, 1037 (Me.1991). The term "sum certain" has been held to have a meaning similar to "liquidated amount." *See generally* 47 Am.Jur.2d *Judgments* § 1157 (1969). "A claim is liquidated when the amount thereof has been ascertained and agreed upon by the parties or fixed by operation of law." *Hallett Constr. Co. v. Iowa State Highway Comm'n*, 258 Iowa 520, 139 N.W.2d 421, 426 (1966). The term

"sum certain," therefore, contemplates a situation where the amount due cannot be disputed. *See Reynolds Sec., Inc. v. Underwriters Bank*, 44 N.Y.2d 568, 406 N.Y.S.2d 743, 746, 378 N.E.2d 106, 109 (1978). Such situations include actions on money judgments, negotiable instruments, or similar actions where the damages sought can be determined without resort to extrinsic proof. *Id.*

▮ Interstate's complaint states a claim for $12,967.84 and is supported by the attachment of six shipping invoices. Even assuming that an invoice can establish the liquidated amount of the claim, the invoices here fail to do so. The total amount of the six invoices is $33,932.59. The only explanation given for the $20,964.75 difference between the two figures is that $12,967.84 represents the amount due after certain credits have been deducted. Without some statement concerning the parties' agreement with respect to the extent of the credit, it cannot be said that the amount due is undisputed. Documentation showing a debt of $33,932.59 does not render a claim for $12,967.84 a sum certain. Nor is Interstate's claim for a sum certain merely because it is for a specific dollar amount. *See, e.g., Hecht Realty, Inc. v. Hastings*, 45 N.C.App. 307, 262 S.E.2d 858, 859 (1980). Because Interstate's claim is not for a "sum certain or for a sum which can by computation be made certain," the clerk had no authority to enter the default judgment and it is therefore void.

The entry is:

Denial of motion to set aside default affirmed.

Default judgment vacated. Remanded for further proceedings consistent with the opinion herein.

All concurring.