STATE OF MAINE
ANDROSCOGGIN, ss.

DANIEL MASON and KIRA
BARBER,

        Plaintiffs

v.

ROCKY MOUNTAIN WINGS, LLC
and STACE SCHRADER,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-17-106

JAN 24 '18 PM4:25
ANDRO SUPERIOR COUR

ORDER ON DEFENDANTS'
MOTION TO DISMISS

Before the Court is Defendants Rocky Mountain Wings, LLC ("RMW") and Stace Schrader's motion to dismiss for lack of personal jurisdiction pursuant to Maine Rule of Civil Procedure 12(b)(2). Plaintiffs Daniel Mason and Kira Barber have opposed this motion. Plaintiffs are residents of Androscoggin County, Maine. Defendant RMW is an Idaho Limited Liability Company with a principal place of business in Idaho. Defendant Schrader is an Idaho resident.

I. Background

According to Plaintiffs' complaint, on or about June 24, 2015, Plaintiffs ordered from RMW a kit that was to include all of the parts needed to assemble a fully-functioning airplane. (Pls.' Compl. ¶¶ 7-8.) Schrader is in complete control of RMW. (*Id.* ¶ 6.) Schrader charged Plaintiffs $10,950.00 up-front and agreed to use the money to assemble a kit consisting entirely of new parts. (*Id.* ¶ 8.) About a year later, Schrader informed Plaintiffs that their kit was ready for shipment. (*Id.* ¶ 9.) He charged Plaintiffs $2,342.68 to ship the kit from Idaho to Maine. (*Id.*)

When the kit arrived, Plaintiffs discovered some parts were used and damaged, and some parts were missing altogether. (*Id.* ¶¶ 10-11.) Plaintiff Mason contacted Schrader who, over the course of several conversations, promised to deliver the missing

parts and replace the damaged parts. (*Id.* ¶ 12.) Schrader has not done so. (*Id.*) Schrader also admitted to Mason that rather than use Plaintiffs' money to obtain the parts for their kit, he had instead used the money to settle disputes with other customers. (*Id.* ¶ 13.)

On July 10, 2017, Plaintiffs contacted Defendants and demanded reimbursement for the amount they paid for the kit and shipping, as well as other related costs and expenses. (*Id.* ¶ 15.) On August 2, 2017, Defendants refused to reimburse Plaintiffs. (*Id.* ¶ 16.) On August 16, 2017, Plaintiffs filed their complaint, which includes counts for breach of contract, breach of the warranty of merchantability, misrepresentation, conversion, and unfair and deceptive trade practices.

On October 13, 2017, Defendants filed this motion to dismiss and attached Schrader's affidavit. In his affidavit, Schrader states he has never been to Maine; neither he nor RMW own or have ever owned property in Maine; Defendants do not regularly conduct business in Maine; Defendants do not advertise or solicit sales in Maine; and since 1999, RMW has made three sales in Maine, all of which originated when the buyers contacted Defendants through their website or by telephone to its Idaho office. (Schrader Aff. ¶¶ 5-12.)

II. Discussion

"The proper exercise of personal jurisdiction in a Maine court hinges on the satisfaction of two requirements: first, that the Maine Long-Arm Statute ... confers personal jurisdiction on the court; and second, that the exercise of jurisdiction pursuant to the long-arm statute complies with constitutional due process requirements." *Jackson v. Weaver*, 678 A.2d 1036, 1038 (Me. 1996). Maine's long-arm jurisdiction statute provides that "[t]his section, to insure maximum protection to citizens of this State, shall be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by

the due process clause of the United States Constitution, 14th amendment." 14 M.R.S. § 704-A(1). The statute further states, in relevant part:

> Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated in this section, thereby submits such person ... to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:
>
> A.    The transaction of any business within this State;
>
> B.    Doing or causing a tortious act to be done, or causing the consequences of a tortious act to occur within this State;
>
> ...
>
> F.    Contracting to supply services or things within this State....

*Id.* § 704-A(2). Taking the allegations in Plaintiff's complaint as true, Defendants subjected themselves to Maine's long-arm jurisdiction by transacting business within this state, causing the consequences of tortious acts to occur in this state, and contracting with Plaintiffs to provide things within this state.

In addition to satisfying the long-arm statute, in order for the state of Maine to exercise jurisdiction over a non-resident defendant, the exercise of jurisdiction must comport with the Due Process clauses of the Maine Constitution, Me. Const. art. I, § 6-A, and the United States Constitution, U.S. Const. amend. XIV, § 1. Maine courts have developed a three-prong test to determine whether the exercise of personal jurisdiction over a non-resident defendant is consistent with the requirements of due process. This test requires that: 1) Maine has a legitimate interest in the subject matter of the controversy; 2) the defendant, by its conduct, should reasonably have anticipated litigating in Maine; and 3) the exercise of jurisdiction by Maine's courts comports with traditional notions of fair play and substantial justice. *Estate of Hoch v. Stifel,* 2011 ME 24, ¶ 25, 16 A.3d 137; *Interstate Food Processing Corp. v. Pellerito Foods, Inc.,* 622 A.2d 1189, 1191

(Me. 1993). The plaintiff bears the burden of establishing that jurisdiction is proper under the first two prongs of the test based on specific facts in the record. *Cavers v. Houston McLane Co.*, 2008 ME 164, ¶ 19, 958 A.2d 905. The burden then shifts to the defendant to show that jurisdiction is improper under the third prong. *See id.* "The record must be construed in the manner most favorable to the party asserting jurisdiction." *Id.*

As to the first prong, Maine has an interest in providing its citizens with a means of redress against non-residents. *Interstate Food Processing Corp.*, 622 A.2d at 1192. Furthermore, Maine has an interest in regulating non-resident "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of'" Maine. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985); *see Electronic Media Int'l v. Pioneer Commc'ns of Am., Inc.*, 586 A.2d 1256, 1259 (Me. 1991). In this case, although Plaintiffs initially contacted Defendants about purchasing the airplane kit, Defendants entered into a contractual relationship with Plaintiffs that lasted for more than a year and thereby incurred continuing obligations to Plaintiffs. Defendant sent the airplane kit to Plaintiffs' home in Maine and engaged in numerous conversations with Plaintiffs while Plaintiffs were in Maine. Thus, Maine has a legitimate interest in the subject matter of this controversy.

Regarding the second prong, for a foreign entity to be subject to Maine's jurisdiction, the entity must have sufficient contacts with Maine to make it reasonable to require the entity to defend the suit here. *Interstate Food Processing Corp.*, 622 A.2d at 1192. The defendant's contacts may not result solely from the unilateral activity of the plaintiff; rather, the defendant must purposefully avail itself of "the privilege of conducting activities within [Maine], thus invoking the benefits and protections of its laws." *Burger King Corp.*, 471 U.S. at 474-75; *Interstate Food Processing Corp.*, 622 A.2d at 1192. This requirement is met when a defendant purposefully directs his activities at Maine

residents by deliberately engaging in significant activities in Maine or by creating continuing obligations between himself and Maine residents. *Hoch*, 2011 ME 24, ¶ 27, 16 A.3d 137; *Interstate Food Processing Corp.*, 622 A.2d at 1192. By entering into an ongoing contractual relationship with Plaintiffs, Defendants created meaningful contacts with Maine residents and purposefully availed themselves of the privilege of conducting business in Maine. Defendants had multiple telephone calls with Plaintiffs during which Defendants knew or should have known Plaintiffs were in Maine. Defendants also knew their product was going to end up in Maine for use by Maine residents. Further, this was not the first time Defendants had contracted for business with Maine residents; Defendants admit they had made sales to Maine residents at least three times in the past. Defendants' conduct in entering into and carrying out its transaction with Plaintiffs establishes that it should have reasonably anticipated litigating in Maine.

As to the third prong, Defendants have not met their burden of demonstrating that the exercise of personal jurisdiction over them in Maine does not comport with traditional notions of fair play and substantial justice. "'This analysis requires consideration of a variety of factors including the nature and purpose of defendant's contacts with [Maine], the connection between the contacts and the cause of action, the number of contacts, the interest of [Maine] in the controversy, and the convenience and fairness to both parties.'" *Hoch*, 2011 ME 24, ¶ 28, 16 A.3d 137 (quoting *Cavers*, 2008 ME 164, ¶ 36, 958 A.2d 905). In this case, Defendant's Maine contacts and the causes of action are inextricably connected. Further, regarding convenience, some of the most important items of evidence in this case – the airplane parts – are located in Maine. Defendants put forth little effort in arguing that Maine's exercise of personal jurisdiction over them would be unfair or inconvenient, and the arguments presented to the Court tip in favor of finding that litigating in Maine would comport with fair play and substantial justice.

## III. Conclusion

For the foregoing reasons, this Court finds it may exercise personal jurisdiction over Defendants in this matter. The Court DENIES Defendants' motion to dismiss. The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: __1/24/18__

MaryGay Kennedy
Justice, Superior Court