STATE OF MAINE                                    SUPERIOR COURT
ANDROSCOGGIN, ss.                                 CIVIL ACTION
                                                  DOCKET NO. CV-19-39

E.W. MAILHOT SAUSAGE CO.,          )
                                   )
            Plaintiff              )
                                   )
      v.                           )              ORDER ON DEFENDANT'S
                                   )              MOTION TO DISMISS
HEBO FAMILY FOODS, INC. d/b/a      )
LANDRY'S MEAT PIES,                )
                                   )
            Defendant.             )

JUL 12 '19 PM12:03
ANDRO SUPERIOR COURT

Before the Court is Defendant HeBo Family Foods, Inc. d/b/a/ Landry's Meat Pies's ("HeBo") motion to dismiss pursuant to Maine Rules of Civil Procedure 12(b)(2) and 12(b)(6). Plaintiff E.W. Mailhot Sausage Co. ("Mailhot") has filed an opposition, and this motion is in order for decision. For the following reasons, the motion is denied.

I. Background

According to the allegations in Mailhot's complaint, Mailhot is a Maine corporation headquartered in Lewiston, Maine, and HeBo is a Massachusetts corporation headquartered in North Attleboro, Massachusetts. (Pl.'s Compl. ¶¶ 1-2.) Mailhot has been in the butcher and meat production business for over 100 years, creating meat products such as sausages and meat pies. (Pl.'s Compl. ¶¶ 7-8.) For many years, a major part of Mailhot's business was making private label meat products for other food sellers. (Pl.'s Compl. ¶ 9.) One of its clients is HeBo, which sold Mailhot-made products under the label "Landry's Meat Pies." (Pl.'s Compl. ¶ 10.) Although Mailhot previously had other customers purchasing private label products, the President of HeBo, Sean Healey, insisted that Mailhot only make private label products for HeBo, or he would find another supplier. (Pl.'s Compl. ¶ 12.) HeBo has had a systematic and continuous business relationship with Mailhot for approximately twenty years. (Pl.'s Compl. ¶¶ 3, 13.)

Mailhot's complaint further alleges that, per the terms of an agreement between Mailhot and HeBo, governed by both written and oral representations made over many years, Mailhot agreed to deliver meat products to HeBo in exchange for timely payment from HeBo. (Pl.'s Compl. ¶ 14.) Mailhot's practice has been to deliver products with a written invoice listing the products delivered, the date, and the amount due. (Pl.'s Compl. ¶ 15.)

On February 15, 2018, Marc Mailhot, Vice-President and CEO of Mailhot, sent a letter to HeBo noting that it had been 13 years since the last time Mailhot had increased prices for HeBo, and in order to regain profitability, Mailhot needed to raise prices. (Pl.'s Compl. ¶¶ 16-17.) The letter stated that beginning April 1, 2018, payment terms would be 21 days. (Pl.'s Compl. ¶ 18.) On March 24, 2018, Mr. Mailhot sent another letter to HeBo memorializing a conversation in which the parties agreed that payment terms would be 45 days. (Pl.'s Compl. ¶¶ 19-20.)

From February 1, 2018 to September 28, 2018, Mailhot made 35 deliveries to HeBo, 11 of which went unpaid. (Pl.'s Compl. ¶ 21.) The invoices for the deliveries state that late payments are subject to an 18% per annum charge. (Pl.'s Compl. ¶ 22.) On November 20, 2018, Mailhot's counsel sent a letter to HeBo demanding payment in full for products previously delivered, but no payment was received. (Pl.'s Compl. ¶ 25.) On January 8, 2019, Mailhot sent a follow-up letter reiterating its demand for immediate payment and warning HeBo that its next course of action would be to file suit. (Pl.'s Compl. ¶ 26.) No payment was received, and Mailhot filed this action on March 4, 2019. As of that date, HeBo owed Mailhot $65,217.93, excluding interest. (Pl.'s Compl. ¶ 23.)

Mailhot's complaint alleges counts for breach of contract, quantum meruit, and unjust enrichment. HeBo filed the instant motion to dismiss on April 17, 2019, arguing that this Court may not exercise personal jurisdiction over HeBo and that Mailhot has

failed to state a claim upon which relief may be granted. Mailhot filed an opposition on May 6, 2019, attaching the affidavit of Marc Mailhot in support of its jurisdictional allegations.

II. Discussion

A. HeBo's Rule 12(b)(2) Motion

"The proper exercise of personal jurisdiction in a Maine court hinges on the satisfaction of two requirements: first, that the Maine Long-Arm Statute ... confers personal jurisdiction on the court; and second, that the exercise of jurisdiction pursuant to the long-arm statute complies with constitutional due process requirements." *Jackson v. Weaver*, 678 A.2d 1036, 1038 (Me. 1996). Maine's long-arm jurisdiction statute, 14 M.R.S. § 704-A(1), provides that "[t]his section, to insure maximum protection to citizens of this State, shall be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the United States Constitution, 14th amendment." The statute further states, in relevant part:

> Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated in this section, thereby submits such person ... to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:
>
> A.    The transaction of any business within this State; ...
>
> I.    Maintain any other relation to the State or to persons or property which affords a basis for the exercise of jurisdiction by the courts of this State consistent with the Constitution of the United States.

14 M.R.S. § 704-A(2). HeBo subjected itself to Maine's long-arm jurisdiction by transacting business within this state and by maintaining an ongoing business relationship with a business entity headquartered in this state.

In addition to satisfying the long-arm statute, in order for the state of Maine to exercise jurisdiction over a non-resident defendant, the exercise of jurisdiction must

comport with the Due Process clauses of the Maine Constitution, Me. Const. art. I, § 6-A, and the United States Constitution, U.S. Const. amend. XIV, § 1. Maine courts have developed a three-prong test to determine whether the exercise of personal jurisdiction over a non-resident defendant is consistent with the requirements of due process. This test requires that: 1) Maine has a legitimate interest in the subject matter of the controversy; 2) the defendant, by its conduct, should reasonably have anticipated litigating in Maine; and 3) the exercise of jurisdiction by Maine's courts comports with traditional notions of fair play and substantial justice. *Estate of Hoch v. Stifel*, 2011 ME 24, ¶ 25, 16 A.3d 137; *Interstate Food Processing Corp. v. Pellerito Foods, Inc.*, 622 A.2d 1189, 1191 (Me. 1993). The plaintiff bears the burden of establishing that jurisdiction is proper under the first two prongs of the test based on specific facts in the record. *Cavers v. Houston McLane Co.*, 2008 ME 164, ¶ 19, 958 A.2d 905. The burden then shifts to the defendant to show that jurisdiction is improper under the third prong. *See id.* "The record must be construed in the manner most favorable to the party asserting jurisdiction." *Id.*

As to the first prong, Maine has an interest in providing its citizens with a means of redress against non-residents. *Interstate Food Processing Corp.*, 622 A.2d at 1192. Maine also has an interest in "protection of its industries" and "the location of witnesses and creditors within its border." *Murphy v. Keenan*, 667 A.2d 591, 594 (Me. 1995). The Court agrees with Mailhot that Maine has an interest in enforcing the legal obligations of resident businesses' out-of-state business partners, particularly when those obligations arose in the context of a lengthy ongoing business relationship, as Mailhot alleges occurred here.

Regarding the second prong, for a foreign corporation to be subject to Maine's jurisdiction, the corporation must have sufficient contacts with Maine to make it reasonable to require the corporation to defend the suit here. *Interstate Food Processing*

*Corp.*, 622 A.2d at 1192. The defendant's contacts may not result solely from the unilateral activity of the plaintiff; rather, the defendant must purposefully avail itself of "the privilege of conducting activities within [Maine], thus invoking the benefits and protections of its laws." *Burger King Corp.*, 471 U.S. at 474-75; *Interstate Food Processing Corp.*, 622 A.2d at 1192. This requirement is met when a defendant purposefully directs his activities at Maine residents by deliberately engaging in significant activities in Maine or by creating continuing obligations between himself and Maine residents. *Hoch*, 2011 ME 24, ¶ 27, 16 A.3d 137; *Interstate Food Processing Corp.*, 622 A.2d at 1192.

Without question, through years of transacting business with Mailhot, HeBo created continuing obligations between itself and a Maine business. Further, Mailhot alleges Mr. Healey insisted Mailhot cease working with other customers purchasing private label products and only make private label products for HeBo, and that Mailhot acquiesced to this request. (Pl.'s Compl. ¶ 12; Mailhot Aff. ¶¶ 15-16.) Mr. Mailhot's affidavit also states that Mr. Healey made frequent trips to the Mailhot facility in Maine, attempted to exert control over product manufacturing, and gave instructions to Mailhot employees. (Mailhot Aff. ¶¶ 12-13). Mailhot has adequately established that HeBo, through its own conduct, created meaningful contacts with Maine residents and purposefully availed itself of the privilege of conducting business in Maine and that it should have reasonably anticipated litigating in Maine.

As to the third prong, HeBo has not met its burden of demonstrating that the exercise of personal jurisdiction in Maine does not comport with traditional notions of fair play and substantial justice. "'This analysis requires consideration of a variety of factors including the nature and purpose of defendant's contacts with [Maine], the connection between the contacts and the cause of action, the number of contacts, the interest of [Maine] in the controversy, and the convenience and fairness to both parties.'"

*Hoch*, 2011 ME 24, ¶ 28, 16 A.3d 137 (quoting *Cavers*, 2008 ME 164, ¶ 36, 958 A.2d 905). HeBo argues that Mailhot solicited HeBo's out-of-state business and that the parties engaged in and conducted all business activities outside the State of Maine. Construing the record in favor of Mailhot, however, HeBo's argument is inconsistent with the allegations in Mailhot's complaint as well as Mr. Mailhot's affidavit. HeBo has failed to demonstrate that Maine's exercise of personal jurisdiction over it would be unfair or unjust. Thus, the Court finds it may exercise personal jurisdiction over HeBo in this matter.

## B. HeBo's Rule 12(b)(6) Motion

The court will grant a dismissal when the complaint fails "to state a claim upon which relief can be granted." M.R. Civ. P. 12(b)(6). A motion to dismiss for failure to state a claim tests the legal sufficiency of a complaint. *State v. Weinschenk*, 2005 ME 28, ¶ 10, 868 A.2d 200. The sufficiency of a complaint is a question of law. *Bean v. Cummings*, 2008 ME 18, ¶ 7, 939 A.2d 676. On a motion to dismiss for failure to state a claim, the facts are not adjudicated. *Marshall v. Town of Dexter*, 2015 ME 135, ¶ 2, 125 A.3d 1141. The court reviews the material allegations in the complaint in the light most favorable to the plaintiff to determine whether the plaintiff would be entitled to relief pursuant to some legal theory. *Bean*, 2008 ME 18, ¶ 7, 939 A.2d 676. Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that the plaintiff might prove in support of its claim. *Id.*

HeBo generally argues that Mailhot's breach of contract claim should be dismissed because it fails to allege essential terms of the contract with sufficient specificity. At the motion to dismiss stage, courts do not require the level of specificity demanded by HeBo. Rather, to properly state a claim for breach of contract, a plaintiff need only allege (1) a breach of a material contract term, (2) causation, and (3) damages. *See Me. Energy Recovery*

*Co. v. United Steel Structures, Inc.*, 1999 ME 31, ¶ 7, 724 A.2d 1248. Mailhot has alleged that HeBo failed to pay for products delivered to HeBo pursuant to a contractual relationship, and that such failure caused damages to Mailhot in the amount of $65,271.93 plus interest. Taking the allegations in Mailhot's complaint as true, Mailhot has pleaded sufficient facts to state a claim for breach of contract.

HeBo next argues that Mailhot's breach of contract claim should be dismissed because the contract does not comply with the Statue of Frauds. Maine's Statute of Frauds requires a writing signed by the party to be charged to evidence "any agreement that is not to be performed within one year from the making thereof...." 33 M.R.S. § 51(5). HeBo argues that the complaint contains only a "bare allegation of some sort of writing" and that the alleged contract could not be performed within a year.

It is doubtful that the Statute of Frauds is applicable in this case. Although the complaint alleges the parties have been engaged in a contractual relationship for twenty years, Mailhot's position is that each unpaid invoice represents a separate contract and a separate breach. There is nothing in the record at this early stage upon which to base a finding that these contracts were not to be performed within one year; rather, the complaint alleges that the parties agreed each invoice was to be paid within 45 days. Thus, HeBo has not demonstrated that Mailhot's claim for breach of contract is barred by the Statute of Frauds.

Finally, HeBo argues that Mailhot has failed to state a claim for unjust enrichment.[1] To state a claim for unjust enrichment, the complaining party must allege that "'(1) it conferred a benefit on the other party; (2) the other party had appreciation or knowledge of the benefit; and (3) the acceptance or retention of the benefit was under such

---

[1] HeBo also states in conclusory fashion that Mailhot has not stated a claim for quantum meruit. Because this argument was not developed within HeBo's motion, this ground for dismissal is denied.

circumstances as to make it inequitable for it to retain the benefit without payment of its value.'" *Maine Eye Care Assocs., P.A. v. Gorman*, 2008 ME 36, ¶ 17, 942 A.2d 707. In Count III of its complaint, Mailhot alleges that it delivered meat products to HeBo, that HeBo had knowledge of the deliveries and accepted the deliveries, and that it would be inequitable for HeBo to retain the deliveries without payment. Mailhot has adequately pleaded a claim for unjust enrichment.

III. Conclusion

For the foregoing reasons, Defendant HeBo Family Foods, Inc.'s motion to dismiss is DENIED. The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: 7/9/19

MaryGay Kennedy
Justice, Superior Court