**AMBERSON HOLDINGS LLC,**
**and Amberson, Inc.**

v.

**WESTSIDE STORY NEWSPAPER,**
**Wallace J. Allen and W.J. Allen**
**Multimedia Productions, Inc.**

No. CIV.A. 00–1108 NHP.

United States District Court,
D. New Jersey.

Aug. 22, 2000.

David A. Picon, Proskauer Rose LLP, Newark, NJ, for Plaintiffs.

Dennis W. Blake, Rubenstein, Rudolph, Meyerson & Blake, P.A., Oakland, NJ, Rickey Ivie, Ivie, McNeill & Wyatt, Los Angeles, CA, for Defendants.

POLITAN, District Judge.

Dear Counsel:

This matter comes before the Court on the motion by defendants Westside Story Newspaper, Wallace J. Allen and W.J. Allen Multimedia Productions, Inc., to dismiss the Complaint of plaintiffs Amberson Holdings LLC, and Amberson, Inc., for lack of personal jurisdiction. This matter was resolved without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated herein, the motion by defendants' Westside Story Newspaper, Wallace J. Allen and W.J. Allen Multimedia Productions, Inc. Motion to Dismiss is **GRANTED** and the Complaint of plaintiffs is **DISMISSED WITHOUT PREJUDICE.** Accordingly, this case is **CLOSED.**

## STATEMENT OF FACTS

Defendants Westside Story Newspaper, Wallace J. Allen and W.J. Allen Multimedia Productions, Inc. (hereinafter collectively referred to as "defendants"), own and operate a weekly newspaper that is based in Southern California. *See* Affidavit of Wallace Allen, ¶ 4. It is alleged that Westside is the alter ego of defendants Wallace J. Allen and W.J. Allen Productions, Inc. and vice versa. *See id.,* ¶ 6. Plaintiffs' trademark, "West Side Story", is incorporated into the title of defendants newspaper. *See* Complaint, ¶ 27.

In addition to the allegations of infringement based on the title of defendants newspaper, plaintiffs claim that defendants have further infringed their trademark by registering with Network Solutions, Inc., the exclusive registrar of domain names, for the Internet domain name "westsidestory.com". *See id.,* ¶ 30. After completing registration of its domain name, defendants assigned, by written contract, "westsidestory.com" to a "host server"[1] that is owned and operated by a New Jersey corporation. *See* Affidavit of Andrew L. Lee at Exhibit B.

With its new domain name up and running, defendants began publishing and maintaining a website at "westsidestory.com" without plaintiffs' permission. *See* Complaint, ¶ 48. It is common knowledge that defendants generate significant revenue from its website by way of "click-through" advertising. *See id.,* ¶ 36.

Plaintiffs contacted defendants regarding the alleged infringement and were met with an invitation to purchase "westsidestory.com". *See* Affidavit of Andrew L. Lee, ¶ 9. Defendants rejected the offer and, shortly thereafter, Congress passed the Anticybersquatting Consumer Protection Act, 15 U.S.C. Section 1125(d), which made it illegal for an individual or entity to register a trademark as a domain name with the intent to sell it for a profit to the rightful owner. *See* Complaint, ¶ 46. To protect against a possible lawsuit, defendants immediately added a disclaimer to their website stating, "Westside Story Not Affiliated with West Side Story the Musical." *See id.,* ¶ 47.

Ultimately, plaintiffs filed an action seeking redress for the alleged infringements. Defendants responded with the subject Motion to Dismiss plaintiffs' claim for lack of personal jurisdiction and for failure to state a claim upon which relief can be granted.

## DISCUSSION

The Supreme Court has expressly mandated that a plaintiff must establish certain

---

1. A "host server" is a computer that is connected to a network, which provides data and services to other computers. Such services may include data storage, file transfer, data processing, e-mail, bulletin board services, World Wide Web, etc. *See The Computer User* (visited August 10, 2000) <http://www.computeruser.com/resources/dictionary/searcher.html>.

procedural prerequisites before a federal court can exercise personal jurisdiction. *See Omni Capital Intern. v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987). Once the procedural prerequisites have been met, the next question, then, is whether the district court may exercise *in personam* jurisdiction over the particular defendant.

■ A district court may exercise jurisdiction over a nonresident of the state in which that court sits only to "the extent authorized by the laws of that state." *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 436 (3d Cir.1987). New Jersey's long-arm statute permits courts to exercise jurisdiction to the fullest extent under the Constitution. *See Avdel Corp. v. Mecure,* 58 N.J. 264, 268, 277 A.2d 207 (1971); N.J. CT. R. 4:4–4. Accordingly, this Court's analysis must focus on whether an exercise of jurisdiction comports with the requirements of the Due Process Clause of the Fourteenth Amendment.

The constitutional touchstone of this analysis is whether the "defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)(quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The minimum contacts must have a basis in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Rudzewicz,* 471 U.S. at 475, 105 S.Ct. 2174. "The 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, *Keeton v. Hustler Magazine, Inc.,* 465 U.S. at 774, 104 S.Ct. at 1478; *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. at 299, 100 S.Ct. at 568, or of the "unilateral activity of another party or third person," *Helicopteros Nacionales de Columbia, S.A. v. Hall,* supra,

466 U.S. at 417, 104 S.Ct. at 1873." "Jurisdiction is proper ... where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Id.* (quoting *McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)). Once minimal contacts are established, the court must ensure that the maintenance of the lawsuit does not offend "traditional notions of fair play and substantial justice." *International Shoe,* 326 U.S. at 316, 66 S.Ct. 154.

■ In *Helicopteros Nacionales de Colombia v. Hall,* the Supreme Court distinguished the exercise of specific jurisdiction from general jurisdiction. 466 U.S. 408, 414–15, 104 S.Ct. 1868 (1984). When the litigation is related to or arises out of a defendant's contacts with the forum, the jurisdictional analysis focuses on the "relationship among the defendant, the forum and the litigation." *Id.* at 414, 104 S.Ct. 1868 (citing *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)). This requirement is satisfied provided that the contacts resulted from the defendant's purposeful conduct and not the plaintiff's unilateral activities. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297–98, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The courts have referred to this principle as "specific jurisdiction." *Provident,* 819 F.2d at 437.

■ Alternatively, when the cause of action does not relate to or arise out of the defendant's forum-related contacts, jurisdiction may be properly asserted without offending due process if the defendant has sufficient "continuous and systemic" contacts with the forum. The threshold for exercising this "general jurisdiction" is, consequently, significantly greater than the exercise of specific jurisdiction. *Id.* at 437 (citing *Dollar Sav. Bank v. First Sec. Bank of Utah,* 746 F.2d 208, 212 (3d Cir. 1984)).

■ Once a defendant raises the issue of personal jurisdiction, the plaintiff then

bears the burden to demonstrate, by a preponderance of the evidence, that the defendant indeed had contacts sufficient to give the district court jurisdiction. *See Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146–47 (3d Cir.), *cert. denied*, 506 U.S. 817, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992) (citing *Time Share Vacation v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 65 (3d Cir.1984)). Moreover, the plaintiff is required to sustain its burden through sworn affidavits or other competent evidence; at no point may a plaintiff rely on the pleadings alone in order to withstand an *in personam* jurisdictional attack. *See Stranahan Gear Co., Inc. v. NL Indus.*, 800 F.2d 53, 58 (3d Cir.1986); *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n. 9 (3d Cir.1984).

■ In this matter, the factual record reveals that defendants' contacts with New Jersey are not sufficient to support an exercise of personal jurisdiction. To reach this finding, however, this Court has had the additional burden of exploring the issue of personal jurisdiction in the context of the Internet. Although there is no published case in the Third Circuit dealing with this issue, there is no lack of well-reasoned guidance.

Plaintiffs argue that this Court has specific personal jurisdiction over defendants because defendants have: (1) maintained a contractual relationship with a New Jersey company that provides "hosting services" for defendants' website on its Internet servers in New Jersey; (2) on at least two occasions represented to Network Solutions, Inc. that the data making up defendants' website is physically located on servers belonging to a New Jersey corporation and operated and maintained in New Jersey; (3) on those same two occasions, affirmatively instructed Network Solutions, Inc. to arrange for all Internet requests for access to defendants' website be directed to Internet servers physically located in New Jersey; (4) continuously communicated and interacted with visitors to their website via Internet servers phys-

ically located in New Jersey; and (5) regularly transmitted electronic files into New Jersey for storage and operation on Internet servers located in New Jersey for the purpose of establishing and updating their website and conducting business over the Internet using plaintiffs' trademark. *See* Affidavit of Andrew L. Lee, ¶ 2 to 9.

This Court will first address plaintiffs' contract argument. Generally, the act of entering into a contract, without more, cannot serve as a basis for establishing personal jurisdiction over an out of state defendant. *See CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1264 (6th Cir.1996). Traditionally, additional factors such as forum selection and choice of law provisions in the contract, actual injection of goods into the stream of commerce, as well as the duration of a defendant's relationship with the respective state must also be taken into account. *See id.*, at 1265.

In the present case, the record indicates that defendants have a contractual relationship with a New Jersey company. The company is "9 Net Avenue, Inc.", which is in the business of providing "host servers". *See* Affidavit of Andrew L. Lee, Exhibit A. However, as defendants point out, they do not engage nor have they ever engaged in any of the following activities in New Jersey: (1) manufacture of any product; (2) any direct sales; (3) solicitation or advertisement to sell its product; (4) any shipment of merchandise directly into or through the state, or supply of services there; (5) the maintenance of an office; (6) the ownership of any real or personal property; (7) the employment of any employees or agents; or (8) the requirement of or payment of taxes. *See* Affidavit of Wallace Allen, ¶ 4 to 11. The contract between defendants and 9 Net Avenue, Inc. does nothing more than establish a "host server" connection in the State of New Jersey. It is unimaginable that such a contract, without any additional contacts, could serve to subject a defendant to personal jurisdiction.

Plaintiffs argue, however, that defendants' use of a New Jersey server adds additional credence to a finding of minimum contacts. However, access to a website reflects nothing more than a telephone call by a district resident to the defendant's computer servers. *See GTE New Media Services, Inc.*, 199 F.3d at 1349. This court, therefore, refuses to hold that inter-computer transfers of information, which are analogous to forwarding calls to a desired phone number through a switchboard, should somehow establish sufficient contacts that would subject a defendant to personal jurisdiction. The contacts are *de minimis*, and to uphold jurisdiction on this basis would defy common reason. *See GTE New Media Services, Inc.*, 199 F.3d at 1347 (discussing that only five Circuits have addressed personal jurisdiction in the Internet context, and only two have upheld such jurisdiction when: (1) a contract included an express choice of law provision; and (2) the defendant was a "cyber-pirate"). Therefore, this Court finds that defendants' only tie to New Jersey under the traditional analysis is a contract, which is not substantial enough to find minimum contacts.

Looking beyond the traditional tools utilized in a personal jurisdiction determination for Internet cases, this Court has conducted its own independent research which yields newly-evolved criterion. When exploring cases dealing with the Internet, "personal jurisdiction surely cannot be based solely on the ability of District residents to access the defendant's website, for this does not by itself show any persistent course of conduct by the defendant in the District." *GTE New Media Services, Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1349 (D.C.Cir.2000).[2] Therefore, these newly developed criterion must be employed when deciding if personal jurisdiction over a website is appropriate.

Internet sites have been categorized into three different areas: (1) interactive sites (used to conduct business over the web); (2) semi-interactive sites (allows exchange of information with the host computer); and (3) passive sites (not possible to exchange information with the host computer). *See Mink v. AAAA Development, LLC*, 190 F.3d 333, 336 (5th Cir.1999); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir.1997). For interactive sites, an exercise of personal jurisdiction is always appropriate, whereas for passive sites, personal jurisdiction is never appropriate. *See Mink*, 190 F.3d at 336. Semi-interactive sites fall somewhere in the middle of the spectrum, and the exercise of personal jurisdiction is determined by the degree of interactivity and commercial nature of the site. *See id.*

When making an interactivity determination, the court must find "something more" than an advertisement or solicitation for sale of goods to indicate that the defendant purposefully (albeit electronically) directed his activity in a substantial way to the forum state. *See Cybersell, Inc.*, 130 F.3d at 418. Accordingly, when the level of interactivity of a site is limited to receiving a browser's name, address and an indication of interest, without an option to sign up for the service, an exercise of personal jurisdiction would not be appropriate. *See id. See also Mink*, 190 F.3d

**2.** It is important to note that the Internet is a vast and expanding global resource. Through the World Wide Web, private individuals and corporations alike can make information and products available to almost anywhere in the world, without ever leaving their respective state. To this end, if courts were to deem that the mere accessibility of a website could establish the necessary "minimum contacts" to subject a defendant to personal jurisdiction, then there would not be the "degree of predictability to the legal system that allows po-

tential defendant to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *GTE New Media Services, Inc.*, 199 F.3d at 1350 (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 297, 100 S.Ct. 559). This predictability is derived, in part, from the Due Process Clause of the federal constitution. Thus, a liberal application of personal jurisdiction would serve to force this constitutional assurance out of existence.

at 337 (dismissing action for lack of personal jurisdiction because the site merely provided its users with nothing more than product and contact information).

In the present case, this Court conducted independent "field" research, which revealed that "westsidestory.com" is a site that provides information about defendants' company, advertisements of outside vendors with the ability to "click-through", the option to contact the company via e-mail, and nothing more. The site does not sell, or offer for sale any of defendants' products. Defendants' only source of income generated through the site is obtained by the "click-through" option which links users to other sites. *See.* This is surely not the type of commercial activity that rises to the level of contact that would put a potential defendant on notice that they may be subjected to personal jurisdiction in any one of the States. For these reasons, this Court refuses to classify defendants' website as anything more than passive advertisement, which is not grounds for the exercise of personal jurisdiction.

█ Assuming *arguendo* that defendants' have "purposefully availed" themselves to this District, traditional notions of fair play and substantial justice would, nevertheless, be offended by having defendants submit to personal jurisdiction. *See International Shoe*, 326 U.S. at 316, 66 S.Ct. 154. The factors include: "(1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest in the several states in furthering fundamental social policies." *Telesis Mergers & Acquisitions, Inc. v. Atlis Federal SVCS, Inc.*, 918 F.Supp. 823 (D.N.J.1996) (citing *Burger King*, 471 U.S. at 477, 105 S.Ct. 2174). More specifically, when a defendant does not reasonably foresee that his allegedly illegal acts will have significant consequences in another state, and when a defendant does not significantly engage in interstate commerce, it is unreasonable to subject him to personal jurisdiction. *See Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 29 (2nd Cir.1997); *GTE New Media Services, Inc.*, 199 F.3d at 1344.

Here, defendants' only possible connection to New Jersey is a "host server" that channels the flow of information to "westsidestory.com". It is unreasonable that by utilizing a New Jersey server, defendants' should have foreseen being haled into a New Jersey federal court. To hold otherwise would open the door to an unlimited scope of personal jurisdiction in the Internet world. Furthermore, the administration, maintenance, and upkeep of defendants' website is all based out of California where the alleged infringement occurred. It is undoubtedly in the interest of California to decide how to control issues surrounding Internet use that is derived from its' business community. Finally, defendants have never advertised, solicited, or otherwise conducted any sort of business in the State of New Jersey. *See* Affidavit of Wallace Allen, 3 to 11. An exercise of personal jurisdiction would both inconvenience the defendants as well as the District Court of New Jersey. Therefore, this Court finds that subjecting defendants to personal jurisdiction would offend traditional notions of fair play and substantial justice.

## CONCLUSION

For the foregoing reasons, the motion by defendants' Westside Story Newspaper, Wallace J. Allen and W.J. Allen Multimedia Productions, Inc. Motion to Dismiss is **GRANTED** and the Complaint of plaintiffs is **DISMISSED WITHOUT PREJUDICE.** Accordingly, this case is **CLOSED.**

An appropriate Order accompanies this Letter Opinion.