**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

THE CHRISTIAN SCIENCE BOARD OF
DIRECTORS OF THE FIRST CHURCH OF
CHRIST, SCIENTIST; THE CHRISTIAN
SCIENCE PUBLISHING SOCIETY,
                    *Plaintiffs-Appellees,*

v.

DAVID J. NOLAN; UNIVERSITY OF
CHRISTIAN SCIENCE,
                    *Defendants-Appellants,*

and

DAVID E. ROBINSON; THE ROAN
MOUNTAIN INSTITUTE OF CHRISTIAN
SCIENCE AND HEALTH,
                    *Defendants.*

No. 00-2270

THE CHRISTIAN SCIENCE BOARD OF
DIRECTORS OF THE FIRST CHURCH OF
CHRIST, SCIENTIST; THE CHRISTIAN
SCIENCE PUBLISHING SOCIETY,
          *Plaintiffs-Appellees,*

          v.

DAVID J. NOLAN; UNIVERSITY OF
CHRISTIAN SCIENCE,
          *Defendants-Appellants,*

          and

DAVID E. ROBINSON; THE ROAN
MOUNTAIN INSTITUTE OF CHRISTIAN
SCIENCE AND HEALTH,
          *Defendants.*

No. 00-2321

THE CHRISTIAN SCIENCE BOARD OF
DIRECTORS OF THE FIRST CHURCH OF
CHRIST, SCIENTIST; THE CHRISTIAN
SCIENCE PUBLISHING SOCIETY,
          *Plaintiffs-Appellees,*

          v.

DAVID J. NOLAN; UNIVERSITY OF
CHRISTIAN SCIENCE,
          *Defendants-Appellants,*

          and

DAVID E. ROBINSON; THE ROAN
MOUNTAIN INSTITUTE OF CHRISTIAN
SCIENCE AND HEALTH,
          *Defendants.*

No. 00-2322

Appeals from the United States District Court
for the Western District of North Carolina, at Asheville.
Lacy H. Thornburg, District Judge.
(CA-99-148-1)

Argued: April 6, 2001

Decided: July 26, 2001

Before WILLIAMS, TRAXLER, and KING, Circuit Judges.

_____

Affirmed by published opinion. Judge King wrote the opinion, in which Judge Williams and Judge Traxler joined.

_____

**COUNSEL**

**ARGUED:** Brenda Ann Buan, MAHONEY, HAWKES & GOLDINGS, L.L.P., Boston, Massachusetts, for Appellants. Joseph H. Lessem, COWAN, LIEBOWITZ & LATMAN, P.C., New York, New York, for Appellees. **ON BRIEF:** Morris M. Goldings, MAHONEY, HAWKES & GOLDINGS, L.L.P., Boston, Massachusetts, for Appellants.

_____

**OPINION**

KING, Circuit Judge:

In these appeals, we are asked to evaluate the validity of the exercise of jurisdiction by the district court in the Western District of North Carolina over an Arizona defendant, based on that defendant's contributions to a website created and maintained by a North Carolina co-defendant. For the reasons that follow, we conclude that jurisdiction was proper and we affirm the district court.

I.

A.

Founded by Mary Baker Eddy in 1872, The First Church of Christ, Scientist ("TFCCS"), is a Boston-based religious organization with branches located throughout the world. TFCCS is governed by its Board of Directors (the "Board"), whose broad functions include ultimate supervision and control over the church's prolific publishing enterprise, The Christian Science Publishing Society. In furtherance of its religious mission, TFCCS provides a variety of products and publications, many of which bear federally registered and common law trademarks owned by the Board.

Defendants David Nolan and David Robinson are active Christian Scientists whose beliefs diverge in significant respects from those espoused and advanced by TFCCS.[1] In February 1999, Nolan, a resident of Arizona, founded the University of Christian Science ("UCS") as an "electronic campus on the world wide web" which would allow present and potential Christian Scientists to "study the teachings of Mary Baker Eddy and to exchange ideas about Christian Science." J.A. 448. At that time, Nolan began developing the content of his intended online university. Lacking the technical expertise necessary to create and maintain a website, however, Nolan obtained the assistance of David Robinson of Bakersville, North Carolina, in the spring of 1999. Robinson secured a domain name for UCS and posted the files provided to him by Nolan on the newly created site.[2] Following the website's creation, Nolan maintained close contact with Robinson

---

[1]Nolan is the president of United Christian Scientists, Inc., an organization that has challenged the legitimacy of the Board's authority to act under the will and trusts of Mary Baker Eddy. *See, e.g.*, *United Christian Scientists v. First Church of Christ, Scientist*, 829 F.2d 1152 (D.C. Cir. 1987) (holding that a private law granting to TFCCS an exclusive copyright to Mary Baker Eddy's work, *Science and Health, A Key to the Scriptures*, contravened the Establishment Clause of the First Amendment).

[2]The university's website was originally located at the address <http://www.trmi.com/1866.htm> and could be accessed through the site Robinson maintained for The Roan Mountain Institute.

and periodically sent revisions to the site's content, which Robinson posted to the UCS site. Thus, while Nolan apparently was solely responsible for drafting and making judgments regarding the content of the UCS website, it was Robinson who physically created and maintained the site from his North Carolina residence.

B.

On July 23, 1999, the Board filed a trademark infringement suit in the Western District of North Carolina against Robinson and Nolan and the two entities with which they were associated, The Roan Mountain Institute of Christian Science ("TRMI") and UCS, respectively. More specifically, the Board alleged, inter alia, that Nolan and UCS (collectively, the "Nolan Defendants"), without the Board's permission, used certain marks belonging to the Board, or marks "confusingly similar thereto," in printed materials and on the UCS website. The Board also alleged that the Nolan Defendants "have held themselves out as being affiliated with or sponsored by 'The Official Academic Auxiliary of the Board of Education of the Church of Christ, Scientist.'" J.A. 30. In the Board's view, the Nolan Defendants included the terms "Church of Christ, Scientist" and "Board of Education of the Church of Christ, Scientist" in the content of the website and printed materials, knowing and intending that the use of such terms would likely cause confusion, and would mislead the public into believing that their products and services "emanate from, are approved, authorized or sponsored by, or are in some way associated with the Board and/or TFCCS." J.A. 31.

Although the Board's complaint and summons were promptly served on Robinson and TRMI, service of process on Nolan proved more difficult. After an unsuccessful attempt to effect service by certified mail, pursuant to Rule 4(j)(1)(c) of the North Carolina Rules of Civil Procedure, the Board retained the services of a private investigator to locate Nolan. The investigator determined that Nolan was residing in Modesto, California, and a process server was employed to serve Nolan at that location. The process server, however, was also unable to serve Nolan, and the Board, attesting that Nolan was actively evading service of process, sought leave to serve Nolan by publication, pursuant to Rule 4(j1) of the North Carolina Rules of Civil Procedure. The Magistrate Judge for the Western District of

North Carolina granted such leave to the Board by order dated October 20, 1999, and notice was published in the November 16, November 23, and November 30, 1999 editions of *The Modesto Bee* (a newspaper of general circulation in Modesto, California).

As the Nolan Defendants failed to answer or otherwise respond to the Board's complaint, the Board moved the district court for entry of default judgment against them.[3] By its Judgment ("Default Judgment") and accompanying Memorandum and Order entered on July 6, 2001, the district court determined that the Nolan Defendants had infringed certain of the Board's registered trademarks, in violation of the Lanham Act, 15 U.S.C. § 1114, and it permanently enjoined the Nolan Defendants from using those contested marks. The Board thereafter moved to have the Nolan Defendants held in contempt by the district court, maintaining that the Nolan Defendants had failed to comply with the injunction order. On September 6, 2000, the district court entered an order finding that, although the Nolan Defendants had received notice of the Default Judgment, they had violated and continued to violate its terms and provisions. Accordingly, the Nolan Defendants were ordered to appear on September 25, 2000, and to show cause, if they could, why they should not be adjudged in civil contempt of court.

Nolan at last mobilized to oppose the Board's motion for an order of contempt, asserting that the Default Judgment was void for lack of personal jurisdiction or, alternatively, for invalid service of process.

---

[3]Robinson, appearing pro se, filed an answer on behalf of himself and TRMI (collectively, the "Robinson Defendants"), and an injunction was issued by the district court for the Western District of North Carolina against the Robinson Defendants on July 5, 2000, followed, on October 4, 2000, by an order holding them in civil contempt. *See Christian Science Bd. of Dirs. of the First Church of Christ, Scientist v. Robinson*, 123 F. Supp. 2d 965 (W.D.N.C. 2000) (cited *infra* at 9). Although the Robinson Defendants and the Nolan Defendants were co-defendants in this litigation — and indeed were held in civil contempt by the same October 4, 2000 order — the Robinson Defendants unsuccessfully challenged the district court's injunction in a separate appeal resolved by this Court earlier this year. *See Christian Science Bd. of Dirs. of the First Church of Christ, Scientist v. Robinson*, 243 F.3d 536 (4th Cir. 2001) (unpublished table decision).

The district court rejected both of these assertions by order entered on September 20, 2000; two days later, the court addressed the balance of Nolan's arguments for Rule 60 relief, concluding that no "exceptional circumstances" were present to justify setting aside the Default Judgment.[4] Nolan immediately noticed an appeal to this Court from the September 20, 2000 order, and concurrently moved in the district court to stay enforcement of the injunction pending appeal.

Accordingly, at its September 25, 2000 contempt hearing, the district court considered the Nolan Defendants' motion for a stay, along with the Board's motion to find them in contempt of the Default Judgment. On October 4, 2000, the district court ruled in favor of the Board as to both motions. *See Christian Science Bd. of Dirs. of the First Church of Christ, Scientist v. Robinson*, 123 F.Supp.2d 965 (W.D.N.C. 2000). The district court held, more particularly, that its exercise of personal jurisdiction over the Nolan Defendants offended neither the North Carolina long-arm statute nor constitutional due process concerns. *See id.* at 971-76. Moreover, the district court ruled that the Nolan Defendants were unlikely to prevail on the merits of their Lanham Act challenge, i.e., their objections that the offending website did not satisfy the Act's requirement that the protected mark be used "in connection with the sale . . . distribution or advertising of any goods or services," and that, in any case, the website involved protected speech exempt from the Lanham Act's proscriptions. *See id.* at 969-71. Having affirmed the validity of the underlying Default Judgment, the district court then found the Nolan Defendants in continuing defiance thereof and held them both in civil contempt. *See id.* at 978. The Nolan Defendants timely appealed the district court's contempt order of October 4, 2000. We possess jurisdiction over these appeals — encompassing both the September 22, 2000 and October 4, 2000 orders — pursuant to 28 U.S.C. § 1291.

---

[4]Rule 60(b) provides, in relevant part, that the district court

> may relieve a party or party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged . . .; or (6) any other reason justifying relief from the operation of the judgment[.]

Fed. R. Civ. P. 60(b).

## II.

## A.

The fundamental question on appeal — whether the Nolan Defendants' contacts with North Carolina were sufficient to support the district court's exercise of personal jurisdiction — is a question of law which we review de novo. *See Koehler v. Dodwell*, 152 F.3d 304, 307 (4th Cir. 1998) (citation omitted). It is axiomatic that, in order for a district court to validly assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied. First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and, second, the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements. *See, e.g.*, *Stover v. O'Connell Assocs. Inc.*, 84 F.3d 132, 134 (4th Cir. 1994).

The North Carolina long-arm statute provides, inter alia, for jurisdiction over any validly-served defendant who "is engaged in substantial activity within [North Carolina]," *see* N.C. Gen. Stat. § 1-75.4(1)d, or whose act or omission gave rise to an action claiming injury to person or property in North Carolina, *see* N.C. Gen. Stat. § 1-75.4(3). Like those of many other states, North Carolina's long-arm statute is construed to extend jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause. *See Century Data Systems, Inc. v. McDonald*, 428 S.E.2d 190, 191 (N.C. Ct. App. 1993). Thus, the dual jurisdictional requirements collapse into a single inquiry as to whether the defendant has such "minimal contacts" with the forum state that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted).

Here, as the district court duly observed, the Nolan Defendants clearly were not engaged in such "substantial" or "continuous and systematic" activities in North Carolina to subject themselves to the district court's general jurisdiction. *See Christian Science Bd.*, 123 F. Supp. 2d at 974 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984)).[5] Our analysis must focus, then,

---

[5]In contrast to "specific" jurisdiction, a court exercises "general" jurisdiction over a defendant "in a suit not arising out of or related to the

on whether the Board's trademark infringement suit sufficiently arises from, or relates to, the Nolan Defendants' contacts with North Carolina to support an exercise of specific jurisdiction. *See id.* Like the district court before us, we must examine three factors to determine whether specific jurisdiction was appropriate: First, to what extent did the Nolan Defendants "purposefully avail" themselves of the privileges of conducting activities in North Carolina and thus invoke the benefits and protections of its laws; second, did the Board's claims arise out of those North Carolina-related activities; and, finally, was the exercise of jurisdiction constitutionally "reasonable." *See id.*; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 476-77 (1985).

Applying these factors, the district court concluded that the Nolan Defendants had indeed taken "direct actions to create a connection with North Carolina by enlisting Robinson to download their web page design onto his domain, located and maintained in North Carolina," and then consistently sending information, including solicitations for contributions and sales of merchandise, to Robinson for use on the UCS website. *See id.* As to the second requirement, there is no dispute that the material drafted and transmitted by Nolan formed the basis for the alleged infringement. Arriving at the third, "reasonableness" inquiry, the district court restated its finding that the Nolan Defendants, through Robinson, had targeted their activities toward North Carolina. The district court characterized the website as an "interactive" one,[6] engaged in the transaction of business within North Carolina, and thus concluded that it was proper to subject the Nolan Defendants to the forum's jurisdiction.

We agree with the district court that the conditions set forth by the Supreme Court in *Burger King* regarding the permissible exercise of specific personal jurisdiction are fully satisfied in this case. In challenging the district court's decision, the Nolan Defendants strain to argue that the "purposeful availment" condition was absent here, because Nolan neither actively solicited Robinson's services nor compensated them. Instead, the Nolan Defendants insist, Robinson volun-

---

defendant's contacts with the forum." *See Helicopteros Nacionales*, 466 U.S. at 414, nn. 8-9.

[6]*See* discussion of website interactivity in Part II.B, *infra*.

teered to develop and maintain the offending website — an offer which Nolan "passively" accepted. *See* Appellants' Br., at 21. We are unconvinced by the distinction advanced by the Nolan Defendants. A prospective defendant need not initiate the relevant "minimum contacts" to be regarded as purposefully availing himself of the privileges of conducting activity in the forum state. *But see Burger King*, 471 U.S. at 475 (nonresident defendant may not be "haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or the 'unilateral activity of another party or a third person'") (citations omitted). Here, it is evident that Robinson's invitation was extended within the context of his friendship and ongoing correspondence with Nolan, and that Robinson hoped to assist a fellow Christian Science practitioner disseminate information and, at least prospectively, sell religious products and services.[7] Although Nolan was solely responsible for preparing — and, periodically, altering — the content of the UCS website, he depended on Robinson to establish and maintain the actual site.[8] Nolan's connection to North Carolina was by no means fortuitous or unwitting. Rather, Nolan deliberately entered a collaborative enterprise with Robinson, well aware that any potentially tortious content he created would be physically uploaded by a North Carolina resident working on a computer in North Carolina. *See id.* (jurisdiction is proper "where the defendant 'deliberately'

---

[7]The original UCS website, as posted on June 21, 1999, represented that the online university would eventually include such features as "a weekly live Lecture Series utilizing Real Audio," "a University Press which [would] produce an electronic quarterly publication titled, The Christian Science Digest," and "a well stocked Campus Book Store for the purchase of anything and everything that pertains to Christian Science and Mary Baker Eddy[.]" *See* J.A. 69.

[8]The Board would have us characterize Robinson as Nolan's agent; assuming that such an agency relationship existed, Robinson's activities in North Carolina would be attributable to Nolan as principal. *See* Appellee's Br., at 21-22. We are reluctant, however, to conclude that Nolan possessed the requisite degree of control to establish an agency relationship. *See, e.g.*, *Peace River Elec. Coop., Inc. v. Ward Transformer Co., Inc.*, 449 S.E.2d 202, 210-11 (N.C. Ct. App. 1994) ("Our cases emphasize that the element of 'control' is the primary indicator of an agency relationship."). Even in the absence of a formal principal/agent relationship, Nolan's coordination with, and reliance upon, Robinson nonetheless constituted substantial contacts with North Carolina.

has engaged in significant activities within a State, or has created 'continuing obligations' between himself and residents of the forum'") (citations omitted).[9]

Having contented ourselves that the Nolan Defendants "purposefully availed" themselves of the privileges of conducting activity in North Carolina, and that the Board's claims arise from that activity, we arrive at the third *Burger King* factor. Although constitutional reasonableness is a somewhat nebulous concept, we are confident that the district court's assertion of jurisdiction over the Nolan Defendants comports with "traditional notions of fair play and substantial justice." *See Int'l Shoe*, 326 U.S. at 320. In determining whether jurisdiction is constitutionally reasonable, we may evaluate "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *See Burger King*, 471 U.S. at 477 (internal quotation marks omitted). More generally, our reasonableness analysis is designed to ensure that jurisdictional rules are not exploited "in such a way as to make litigation 'so gravely difficult and inconvenient' that a party unfairly is at a 'severe disadvantage' in comparison to his opponent.'" *Id.* at 478.

---

[9]Citing *Amberson Holdings LLC v. Westside Story Newspaper*, 110 F. Supp. 2d 332 (D.N.J. 2000), the Nolan Defendants assert that the mere transmission of content to a server located in the forum state cannot support the exercise of personal jurisdiction. While that may be true, it is not the situation presented here. As the de facto webmaster, Robinson took an active role in creating and updating the UCS website — a site which, incidentally, was operated on a California server. Nolan's ongoing communications with Robinson quite clearly transcended the *de minimis* contacts contemplated in *Amberson Holdings*. *See id.* at 336 (analogizing access to a website, through a server physically located in the forum state, to "forwarding calls to a desired number through a switchboard"). Indeed, in denying jurisdiction, the *Amberson Holdings* court specifically pointed out that the "administration, maintenance, and upkeep of defendants' website" had occurred in a state other than the forum. *See id.* at 337.

Although defending a lawsuit in North Carolina was, without doubt, inconvenient for Nolan, the inconvenience was not so grave as to offend constitutional due process principles. The Board's decision to bring suit in North Carolina, rather than in its home state of Massachusetts, imposed no additional burden on Nolan, while reducing the burden on his co-defendant Robinson. Thus, North Carolina was a relatively sensible choice in terms of promoting judicial efficiency. Moreover, we must reject the suggestion that North Carolina had no interest in the suit. Surely, North Carolina's interest in deterring trademark infringement is implicated by the postings of allegedly infringing materials by a North Carolina resident to a website accessible through a North Carolina-based domain.[10] In short, the district court's exercise of specific personal jurisdiction over the Nolan Defendants is consistent with "traditional notions of fair play and substantial justice."

B.

In their effort to resist the district court's jurisdiction, the Nolan Defendants direct our attention to an emerging series of court decisions addressing the extent to which a nonresident defendant's website may constitute the sole basis for a court's exercise of jurisdiction. Invoking the now-familiar "sliding scale" of interactivity set forth in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1123 (W.D. Pa. 1997) — under which the validity of jurisdiction depends on the "level of interactivity and commercial nature of the exchange of information" of the defendant's website — the Nolan Defendants maintain that the UCS website was essentially "passive" and therefore should not expose them to the district court's jurisdiction. *See* Appellant's Br., at 23-28. This Court has not addressed the propriety of exercising jurisdiction over a defendant whose only contact with the forum state consists of a website accessible by residents

---

[10]We note, though, that North Carolina residents were not necessarily injured to a greater extent than residents of other states. Although the district court suggested that the Nolan defendants "targeted" North Carolina by using a website accessible through a North Carolina domain, *see Christian Science Bd.*, 123 F. Supp. 2d at 974-75, it is not clear to what extent, if any, Robinson's TRMI domain was actually directed at North Carolina residents, or accessed disproportionately by them.

of the forum. While this is an important question — and one which has garnered considerable attention — we need not resolve it in this case, because the Nolan Defendants had specific contacts with North Carolina providing an independent and valid basis for personal jurisdiction.[11]

### III.

Although the Nolan Defendants' appeals focus primarily on their personal jurisdiction challenge, several other issues have been presented for our review.

First, the Nolan Defendants assign error to the district court's refusal to set aside the Default Judgment on the grounds that Nolan was never properly served. Unable to serve Nolan personally, the Board sought and received leave of court to serve by publication. Nolan concedes that he received actual notice of the litigation prior to the entry of the Default Judgment, but maintains that the Default Judgment should nevertheless be set aside because service was effected by publication in California, rather than in Arizona. Under Rule 4(j1) of the North Carolina Rules of Civil Procedure, notice by

---

[11]We note in passing that the offending website was not entirely passive, insofar as it invited visitors to the site to e-mail questions and information requests to Nolan. Although the site anticipated future interactivity, e.g., "chat rooms" and book sales, the site was only minimally interactive when the Board filed its complaint. Had the Board brought suit in another, unrelated forum — South Carolina, for instance — we would be more hesitant to allow the exercise of personal jurisdiction over the Nolan Defendants. *See, e.g.*, *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 337 (5th Cir. 1999) (refusing to allow personal jurisdiction over defendant whose only connection with forum was a website providing users with a printable mail-in order form, a toll-free telephone number, and defendant's mailing address). We are convinced, though, that Nolan's relationship with Robinson — specifically, the benefit Nolan derived from Robinson's North Carolina-based activities — was a reasonable basis for the district court's exercise of personal jurisdiction. *Cf. Designs88 Ltd. v. Power Uptik Prods., LLC*, 133 F. Supp. 2d 873, 877 (W.D.Va. 2001) (allowing Virginia court to exercise jurisdiction over nonresident defendants in partnership dispute involving a website designed, implemented, and maintained by plaintiffs in Virginia).

publication may be effected "in the area where the party to be served is believed by the serving party to be located." The Board ran its notice in *The Modesto Bee*, based on its reasonable belief that Nolan was in Modesto, California; moreover, Nolan admits receiving the copy of the notice that was mailed to him. Nolan's argument that he was never properly served is therefore without merit.

We are similarly unpersuaded by the Nolan Defendants' contention that they were entitled to Rule 60(b) relief from the Default Judgment entered against them. Given that Nolan was concededly aware of the Board's suit, and yet failed to respond or appear prior to the entry of the Default Judgment, we will not disturb the district court's denial of Rule 60(b) relief upon its finding that the Nolan Defendants' neglect was inexcusable.

More substantively, the Nolan Defendants insist that the UCS website did not violate the Lanham Act, and that the district court abused its discretion in denying their motion to stay the injunction pending appeal. After careful consideration, we see no error in the district court's conclusion that the Nolan Defendants were unlikely to succeed on the merits "on the issue of whether their conduct falls within that proscribed by the Lanham Act." *See* 123 F. Supp. 2d at 971. In the circumstances presented, there was no abuse of discretion in the district court's ruling.

Finally, the Nolan Defendants challenge the district court's entry of the civil contempt order, based on its finding that the Nolan Defendants continued to display infringing marks on the UCS website, in knowing violation of a valid injunction. As we have already concluded, *see supra* Part II, the Default Judgment was not void for lack of jurisdiction. The Nolan Defendants maintain, however, that modifications to the UCS website, along with the inclusion of a disclaimer disavowing any affiliation with the Board, rendered their conduct noncontemptuous. We must conclude that the district court acted well within its discretion in determining that the website, even as modified, still did not comply with the terms of the Default Judgment, and thus holding the Nolan Defendants in civil contempt.

## IV.

For the reasons set forth herein, we affirm the district court's order of September 22, 2000, denying the Nolan Defendants' Motion for

Relief from Judgment, and we also affirm its order of October 4, 2000, holding the Nolan Defendants in civil contempt and denying their Motion for a Stay of the Injunction.

*AFFIRMED*