STATE OF MAINE  SUPERIOR COURT
CUMBERLAND, ss CIVIL ACTION
DOCKET NO. CV-07-211

REC - CUM. 9/2̶3̶/2̶0̶0̶7̶

MARK HARMON,
     Plaintiff

ORDER ON
v. DEFENDANT'S
MOTION TO DISMISS

CAUSEWAY AUTOMOTIVE, LLC,
     Defendant

DONALD L. GARBRECHT
LAW LIBRARY

JAN 15 2008

Before the Court is the Defendant Causeway Automotive, LLC's Motions to Dismiss for Lack of Personal Jurisdiction and for Failure to State a Claim Upon Which Relief Can Be Granted or, alternatively, Motion to Compel Arbitration.

## BACKGROUND

Plaintiff Mark Harmon ("Harmon") is a resident of Westbrook, Maine. He is a C-4 quadriplegic and confined to a wheelchair. Harmon requires a specialized van to transport him in his wheelchair. In 2005, Harmon viewed a van on the website maintained by the Defendant Causeway Automotive, LLC ("Causeway") and contacted Causeway via e-mail about purchasing the specialized van. Causeway is a New Jersey limited liability company with a principal place of business in New Jersey. Causeway is not licensed to do business in Maine and has no physical location or employees in Maine.

Harmon had several conversations via e-mail and phone with Causeway representatives. He and a Causeway representative tentatively worked out a deal whereby Harmon would trade in his old van and the parties would ultimately sign a Buyer's Agreement after inspections of each of the vehicles the parties were to acquire. Upon reaching this tentative understanding, Harmon

hired a driver to drive his old van to New Jersey so that it could be inspected by Causeway and to inspect the new van Harmon was to purchase. Causeway maintains that it never asked Harmon to send the driver although it admits that if the deal had occurred, Harmon would have had to pick up the van in New Jersey.

After the inspections were completed, Causeway faxed a Buyer's Agreement, which included an arbitration clause although the parties never discussed any dispute resolution provisions, to Harmon for him to sign. The Buyer's Agreement was not signed by Causeway. Harmon returned a signed copy of the Buyer's Agreement with some alterations, notably including a reduced price for the van. Causeway denies that it ever agreed to these changes. Upon receiving the altered Buyer's Agreement signed by Harmon, Causeway informed the driver and Harmon that there was no sale. All of these events occurred during the driver's sole trip to New Jersey, which lasted for approximately two days. After the deal fell through, the driver returned to Maine driving Harmon's old van, which broke down on the return home and, Harmon claims, thereafter lost its trade-in value.

Causeway alleges, and there is no proof otherwise, that it never signed the Buyer's Agreement. Causeway ultimately sold the van to a wholesaler who then sold the van to Harmon, alleged by Harmon to be at a price higher than that which Causeway agreed to sell the van.

## STANDARD OF REVIEW

On a motion to dismiss, the court must view the facts alleged in the complaint as if they were admitted. *Fortin v. Roman Catholic Bishop of Portland,*

2

2005 ME 57, ¶ 10, 871 A.2d 1208, 1213. The court then examines the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory. *Id.* at ¶ 10, 871 A.2d at 1213-14. The plaintiff is only required to make a prima facie case that the court has jurisdiction. *Dorf v. Complastik Corp.*, 1999 ME 133 ¶ 13, 735 A.2d 984, 988.

It is not required that this Court hold an evidentiary hearing in order to decide this Motion. *Id.* Indeed, courts can determine personal jurisdiction based on the pleadings and initial affidavits alone. *Id.* ¶ 14, 735 A.2d at 988-89. When the court decides a motion to dismiss for lack of personal jurisdiction on the pleadings and affidavits of the parties, the plaintiff is only required to make a prima facie case that the court has jurisdiction. *Id.* Under these circumstances, the plaintiff's written allegations of jurisdictional facts are construed in his favor. *Id.* ¶ 14; 735 A.2d at 989.

## DISCUSSION

### I. Personal Jurisdiction Analysis

Maine's long-arm statute, 14 M.R.S.A. § 704-A, and the due process clause of Maine's Constitution, Me. Const. art. I, § 6-A, control determination of personal jurisdiction over nonresident defendants. *Murphy v. Keenan*, 667 A.2d 591, 593 (Me. 1995). "Maine's jurisdictional reach is coextensive with the due process clause of the United States Constitution." *Id.* General jurisdiction exists when a nonresident defendant "has engaged in 'systematic and continuous activities.'" *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1122 (W.D. Pa. 1997), quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984). As Harmon makes no claim that general jurisdiction exists in this

3

case, the Court must determine whether specific jurisdiction exists in order to subject Causeway to suit in this Court. Specific jurisdiction permits a court to exercise personal jurisdiction over a nonresident defendant only where "the relationship between the defendant and the forum falls within the minimum contacts framework of *International Shoe Co. v. Washington*, 326 U.S. 310 (1945)..." *Id.*, quoting *Mellon Bank PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992).

A three-prong test must be met before Maine can exercise specific jurisdiction over a nonresident defendant: first, Maine must have a legitimate interest in the subject matter of the litigation; second, the defendant, by his conduct, reasonably could have anticipated litigation in Maine; and, finally, the exercise of jurisdiction by Maine's courts comports with traditional notions of fair play and substantial justice. *Murphy*, 667 A.2d at 593. The burden is on the plaintiff to prove the first two prongs; upon such a showing, the burden shifts to the defendant to show that the third prong is not satisfied (i.e., that the exercise of jurisdiction does not comport with traditional notions of fair play and substantial justice). *Id.* at 594; *Interstate Food Processing Corp. v. Pellerito Foods, Inc.*, 622 A.2d 1189, 1191 (Me. 1993).

## A. Maine's Legitimate Interest in the Subject Matter of the Litigation

Maine does have a legitimate interest in "providing its citizens with a means of redress against nonresidents," but an interest "beyond mere citizenry is necessary, such as the protection of its industries, the safety of its workers, or the location of witnesses and creditors within its borders." *Murphy*, 667 A.2d at 594. Maine courts have found such a legitimate interest where a fire that was the

4

subject of the litigation occurred in Maine and all investigations into the fire took place in Maine, *Total Fitness, Inc. v. Finlandia Sauna Products, Inc.*, 2006 Me. Super. LEXIS 226, *10-11; where a resident plaintiff was injured out of state while "engaged in activities in the course of trade that is essential to Maine's economy" and whose injuries were treated entirely in Maine, such that relevant medical records and witnesses were located in Maine, *Harriman v. Demoulas Supermarkets, Inc.*, 518 A.2d 1035, 1036-37 (Me. 1986); where a defendant engaged in "extensive business dealings with a Maine corporation," *RF Technologies Corp. v. Applied Microwave Technologies, Inc.*, 369 F. Supp. 2d 24, 30 (D. Me. 2005) (applying the same tripartite test for determining personal jurisdiction as Maine state courts); and where two Maine resident plaintiffs who had been driving in New York City when they were struck by a car driven by an employee of the defendant, a New York corporation, because all the medical witnesses and creditors were located in Maine, *Frazier*, 593 A.2d at 663 (The Law Court found that Maine had a legitimate interest in the litigation, but nonetheless affirmed dismissal of the plaintiffs' complaint because the plaintiffs failed to meet the second prong of the jurisdiction test).

It does not appear, based on the facts before the Court, that Harmon has met his burden of showing that the State of Maine has a legitimate interest in this litigation. Indeed, Harmon has not shown that Maine has an interest "beyond mere citizenry." *See Murphy*, 667 A.2d at 594. This case involves a singular (alleged) contract between an individual resident of Maine and a New Jersey corporation for the sale of one vehicle. No continued business relationship occurred or was expected; no investigation took place in Maine; no medical

witnesses or creditors are located within Maine's borders; and there has been no effect on Maine industries or Maine workers.

There are some facts that may warrant a finding that the State of Maine does in fact have a legitimate interest in this case. For example, Harmon argues that he is a key witness and that he is located in Maine. Moreover, Harmon is a quadriplegic and confined to a wheelchair and traveling to New Jersey to litigate this case would undoubtedly be more difficult for him than litigating in Maine.

Ultimately, however, the Court need not determine whether Maine has a legitimate interest in this litigation as the Court rests its decision on Causeway's Motion to Dismiss for Lack of Personal Jurisdiction on Harmon's failure to meet the second prong of the test for personal jurisdiction, as discussed infra.

B.     Could Defendant Reasonably Have Anticipated Litigation in Maine?

The second prong of the personal jurisdiction analysis demands that a defendant have sufficient minimum contacts with Maine such that it would be "reasonable...to require the [defendant] to defend the particular suit which is brought [here]." *Interstate Food*, 622 A.2d at 1192, quoting *International Shoe*, 326 U.S. at 317. In order to be reasonable, the defendant must have "purposefully avail[ed] itself of 'the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Interstate Food*, 622 A.2d at 1192, quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985). In Maine, purposeful availment occurs when a defendant "purposefully directs his activities at Maine residents" or "creates continuing obligations between himself and the [Maine resident]." *Interstate Food*, 622 A.2d at 1192.

6

The United States Supreme Court has addressed the extent to which a single contract can constitute a contact for due process analysis, holding that an out-of-state party's contract with an individual alone is "clearly" not enough to "establish sufficient minimum contacts" with the individual's home forum. *Burger King Corp.*, 471 U.S. at 478-79. Instead, courts must consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine "whether the defendant purposefully established minimum contacts with the forum." *Id.* The Law Court has both embraced the Supreme Court's holding and offered its own analysis of single contract situations. *See Murphy*, 667 A.2d at 594 (quoting and applying the Supreme Court's holding in *Burger King Corp.*, 471 U.S. at 478-79); *Architectural Woodcraft Co. v. Read*, 464 A.2d 210, 212-13 (Me. 1983).

In *Architectural Woodcraft*, the plaintiff was a Maine company that built a custom staircase for the defendant, an individual domiciled in California whose only contacts with the State of Maine "arose from the purchase of the staircase." *Architectural Woodcraft*, 464 A.2d at 212. While the defendant did communicate with the plaintiff via telephone and mail concerning the staircase, the Law Court, adopting the conclusions of "several recent cases," held that "the existence of a single contract with a resident plaintiff coupled with the use of interstate communications does not establish a basis for asserting jurisdiction over a non-resident defendant." *Id.* at 213, n. 6 and cases cited therein.

The Law Court came to a similar conclusion in *Murphy v. Keenan*, 667 A.2d 591. *Murphy* involved a Maine resident plaintiff who purchased a boat from the defendant, a New Hampshire boat dealership located approximately twenty-five miles from the Maine border. *Id.* at 592. All activities relating to the sale of the

7

boat, including payment and delivery, were conducted in New Hampshire. *Id.* at 593. The *Murphy* Court also noted that contact between the parties was not initiated by the defendant and that there was no contemplation between the parties to do business in the future save for a warranty provision in the bill of sale for the boat. *Id.* at 594. The Law Court held that "a continuing contractual obligation necessary to support the exercise of jurisdiction requires ongoing contact between the parties with the expectation of conducting future business" and that the warranty provision in *Murphy* was insufficient to qualify as such a continuing contractual obligation. *Id.* at 595. The Law Court also rejected the plaintiff's argument that jurisdiction was present because the defendant had committed tortious acts (specifically, fraud and misrepresentation) outside of Maine that caused injuries in Maine. *Id.* The Court held that "the commission outside the forum state of an act that has consequences in the forum state is by itself an insufficient contact where all the events necessary to give rise to a tort claim occurred outside the forum state." *Id.*, quoting *Frazier*, 593 A.2d at 663 (quoting *Martin v. Deschenes*, 468 A.2d 618, 619 (1983)). Finally, the Law Court rejected the plaintiff's argument that the exercise of jurisdiction was proper because it was foreseeable to the defendant that the boat would enter Maine, holding that "foreseeability alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *Murphy*, 667 A.2d at 595, quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980).

In recent years, several courts have ruled on the effect the maintenance of a website that can be accessed in any state has on the determination of personal jurisdiction. *See e.g. Mink v. AAAA Development LLC*, 190 F.3d 333 (5th Cir. 1999); *Zippo*, 952 F. Supp. 1119; *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996);

8

*Amberson Holdings, LLC v. Westside Story Newspaper*, 110 F. Supp. 2d 332 (D.N.J. 2000). *Zippo* categorized websites into three general groups for purposes of personal jurisdiction analysis: first, interactive websites, or those used to do "business over the Internet by entering into contracts with residents of other states;" second, semi-interactive sites in which the "defendant has a website that allows a user to exchange information with a host computer;" and, third, passive sites, which do "nothing more than advertise on the Internet." *Zippo*, 952 F. Supp. at 1123-24; *Mink*, 190 F.3d at 336; *Amberson Holdings*, 110 F. Supp. 2d at 336. Personal jurisdiction is usually appropriate in the case of interactive sites, usually not appropriate for passive sites, and may be appropriate if a semi-interactive site is sufficiently interactive and commercial in nature. *Zippo*, 952 F. Supp. at 1124.

In *Mink*, the Fifth Circuit Court held that a website that posts information about computer products and services, provides visitors with a mail-in order form and provides contact information (telephone number, mailing address and e-mail address) was "insufficient to establish personal jurisdiction." *Mink*, 190 F.3d at 337. In *Bensusan Restaurant Corp. v. King*, the court held that a website that advertised shows at the club run by the defendant was similarly insufficient to confer jurisdiction over the nonresident defendant. *Bensusan Restaurant Corp. v. King*, 937 F. Supp. 295, 301 (S.D.N.Y. 1996), *aff'd* 126 F.3d 25 (2d Cir. 1997). The *Bensusan* court particularly noted that tickets to shows at the club had to be physically picked up in the defendant's home state and not in New York, where the plaintiff brought suit. *Id.*

Harmon has failed to demonstrate that sufficient minimum contacts exist between Causeway and the State of Maine such that Causeway should

reasonably have expected that it might be subject to suit in Maine. Causeway did not advertise in Maine or in any other way seek business or clients in Maine. Indeed, it was Harmon who initiated contact with Causeway concerning the sale of the van after he viewed it on Causeway's website. Harmon states, and Causeway does not refute, that this website requests information about its visitors (name, address, type of vehicle sought) and that it allows visitors to schedule test drives and request quotes for vehicles. The website, however, does not allow actual purchases to be made online, thus removing it from the "interactive website" category. Nor is it proper to categorize Causeway's website as merely passive; after all, it did request information from users and produced results based on the information that was input. Thus, the Causeway website falls into the category of "semi-interactive" and the Court must examine the extent of interactivity and the nature of exchange of information that occurred on the website.

Based on Harmon's own representations about his dealings with Causeway, it is clear that the Causeway website was more like an advertising tool than an actual means of conducting business. In his Complaint, Harmon stated that he "found [the] specialized van on Defendant's web site. Through a series of emails with [Defendant], Mr. Harmon negotiated the terms of purchasing [the van]." Harmon's Complaint, ¶ 4. The website, thus, alerted Harmon to the existence of the van at Causeway's dealership, but the actual process of discussing and negotiating the contract for the van occurred via phone, e-mail and fax and not via the website. For example, the Buyer's Agreement that Harmon signed indicating his intent to purchase the van was faxed to him; it was not obtained via the website or sent by e-mail from an e-mail

10

address associated with the website. Accordingly, Harmon cannot rely solely on Causeway's website to substantiate his claim that this Court has personal jurisdiction over Causeway.

The contact between Harmon and Causeway is limited to a single contract for the one-time purchase of a motor vehicle. The parties did not anticipate an ongoing business relationship nor did Causeway make any concessions with regard to the fact that Harmon was located in Maine. Similar to the *Bensusan* case, physical delivery of the goods at issue (here, the van) required pick-up in the defendant's home state. Indeed, both Harmon and Causeway understood that if Harmon were to purchase the new van, then Harmon would be responsible for picking up it up at Causeway's place of business in New Jersey. That Harmon understood and agreed to this is evidenced by the fact that he sent a driver down to New Jersey precisely for the purpose of picking up the new van. Finally, Causeway includes in all of its contracts an arbitration clause that expressly states that all disputes between signatories shall be resolved via arbitration that is to occur in New Jersey, which further demonstrates that Causeway did not expect litigation in Maine. Accordingly, the holdings of the Law Court in *Architectural Woodcraft* and *Murphy* apply in this case and Harmon has not met his burden of showing that Causeway could have reasonably expected to be subject to suit in Maine.

### C. Exercise of Jurisdiction Must Comport with Traditional Notions of Fair Play and Substantial Justice

While Harmon has not met his burden to prove the first two prongs of the test for personal jurisdiction such that Causeway is entitled to a dismissal without having to meet its own burden under the third prong, the Court finds

11

that Causeway would have met this burden in any event. The third prong requires a defendant to prove that the exercise of personal jurisdiction would not comport with "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 320. In determining whether a defendant has sustained this burden, Maine courts must consider all the facts of the case before it. *Harriman*, 518 A.2d at 1038. Based on the facts as set forth supra, including the State of Maine's attenuated interest in this litigation and the short period of negotiation between the parties leading up to a single contract for one motor vehicle and Causeway's lack of any type of presence in Maine save a mildly interactive website, the Court finds that the exercise of personal jurisdiction over Causeway would not comport with traditional notions of fair play and substantial justice and therefore would be in violation of the due process clause.

## II. Plaintiff's Request to Stay Motion to Dismiss

Harmon asks this Court to defer action on Causeway's Motion to Dismiss for Lack of Personal Jurisdiction until further discovery can be conducted. As of August 30, 2007, the date of the hearing on the Motion to Dismiss, Harmon had sent to Causeway a set of interrogatories and several requests for production of documents. Causeway responded to these initial discovery requests, although it objected to several.

The Court declines to defer action and stay Causeway's Motion for several reasons. First, the Court finds that the discovery sought by Harmon is overbroad. Harmon has requested that Causeway provide information regarding every negotiation, prospective sale and sale that it has made with non-New Jersey residents over the past ten years, including every instance of

12

communication.[1]  Second, Harmon did not bring a separate motion to stay determination of Causeway's Motion to Dismiss.  Third, Harmon has not filed a Motion to Compel Discovery with this Court regarding Causeway's objections to his discovery requests.  Finally, Harmon has not pointed to any evidence that would support a finding that further discovery will produce facts that will change the opinion of the Court as set forth above.

## III.  Defendant's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted and Motion to Compel Arbitration

As the Court disposes of this case solely on the basis of Causeway's Motion pursuant to M.R. Civ. P. 12(b)(2), the Court need not and does not make

---

[1] Specifically, the relevant interrogatories read:

2.    Please identify each and every sale over the past ten years to purchasers with residences outside the State of New Jersey or residences unknown, including in your response the name and address of the purchaser, the date of the purchase, the make and model of the vehicle purchased, the purchase price, and whether the purchaser picked up the vehicle at your dealership or whether the vehicle was delivered to the purchaser (and if so to what location).  Please provide any and all documents relating to your response.

3.    Please identify any and all correspondence, including but not limited to e-mail or text messages, over the past ten years with purchasers or prospective purchasers whose residence is outside the State of New Jersey or is unknown, including in your response the names of the individuals involved in the communications, the residence of the purchaser or prospective purchaser, the dates of the communications, the substance of the communications, and whether the communications contributed or led to a sale.  Please provide any and all documents relating to your response.

4.    Please identify any and all negotiations over the past ten years with purchasers or prospective purchasers whose residence is outside the State of New Jersey or is unknown, including in your response the names of the individuals involved in the negotiations, the residence of the purchaser or prospective purchaser, the dates of the negotiations, and whether the negotiations contributed or led to a sale.  Please provide any and all documents relating to your response.

any ruling on Causeway's M.R. Civ. P. 12(b)(6) Motion or its Motion to Compel Arbitration.

Therefore, the entry is:

Defendant Causeway Automotive, LLC's Motion to Dismiss for Lack of Personal Jurisdiction pursuant to M.R. Civ. P. 12(b)(2) is GRANTED.

The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated at Portland, Maine this 28th day of September, 2007.

Robert E. Crowley
Justice, Superior Court

14

GREGG FRAME ESQ
4 MILK ST
SUITE 103
PORTLAND ME 04101

BRENDAN RIELLY ESQ
JENSEN BAIRD GARDNER & HENRY
PO BOX 4510
PORTLAND ME 04112